MORAN BOLT AND NUT MANUFACTURING COMPANY, Plaintiff, Appellant, v. GEORGE W. CALDWELL and LESTER DRAKE, Defendants, Appellants.

**Division One, February 29, 1912.**

1. **CONTRACTS: Construction: Meaning of Words.** In construing a contract the court does not investigate the meaning of words in the abstract, but deals only with the concrete meaning in concrete contracts. The law puts itself in the shoes of the contracting parties and ascertains the natural and accepted sense of the words used in their agreement viewed in the light of the objects in view and the circumstances surrounding the actors.

2. ——: ——: ——: **"Require."** Plaintiff contracted to furnish defendant with all wrought iron and steel, cast iron and washers for a building covering twenty-two acres, defendant to furnish the plaintiff lists of "material required at least thirty days prior to the time" the defendants required it. *Held,* that, giving to the word "require" the idea it carries in general speech, namely, to demand or request authoritatively, a meaning is evolved from the clause in harmony with the surroundings of the parties and their objects when the agreement was made, i. e., that a list of material should be handed to plaintiff, who should · have thirty days in which to provide the material listed "prior to the time" when it should be required. It was not intended that the submitting of the list should of itself require the delivery of the articles within thirty days, and therefore a failure to deliver within thirty days material specified by list at the beginning of the work, the list covering two-thirds of all the material, was not a breach of the contract.

3. ————: **Counterclaim: Evidence.** Where, in an action on a contract to furnish supplies, there is no evidence that any demand was made of the plaintiff with which it did not comply within thirty days, or according to the terms of the contract, a counterclaim for damages for delay will not be allowed.

4. **REFERENCE:** Evidence: Appeal. In a suit where a compulsory reference might have been ordered, and the case actually was submitted to a referee, the evidence and the findings of the referee are open to full review on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED AND REMANDED (*with directions*).

*Kinealy & Kinealy* for plaintiff appellant.

(1) The words in the plaintiff's proposal accepted by defendants: "You to furnish lists of each and every kind of material required, 'at least thirty days prior to the time you require it,' " are not an agreement or proposal of plaintiff to furnish any material specified in any such list within thirty days after such list has been furnished to plaintiff. Leslie v. Mining Co., 110 Mo. 31; Duhamel v. Stone Co., 59 Wash. 171; McReynolds's Appeal, 66 Pa. St. 102; United States v. Dimmick. 112 Fed. 350; People v. Railroad, 76 Cal. 29; Brewster v. Brewster, 52 N. H. 52; Bowerman v. Mining Co., 98 Mo. App. 317. (2) Where no time is specified for the delivery of material the law is well settled that it must be delivered in what would be a reasonable time under the circumstances. 24 Am. & Eng. Ency. Law, 1073; Berthold v. Construction Co., 165 Mo. 280; Joseph v. Andrews, 78 Mo. App. 551; State v. King, 44 Mo. 238. (3) The court erred in allowing to defendants and adjudging in their favor on their counterclaims the sums of $94.50, of $800, of $704 and of $1874 or any one or part of any one of them. The foundation of the court's action is an erroneous construction of the contract, but even under that con-

struction there was no competent evidence to support any of them in whole or in part.

*Wilfley, Wilfley, McIntyre & Nardin* for defendants appellants.

(1) Words in a contract will be construed according to their usual and customary meaning in the connection in which they are used, the aim of the court being to construe the contract as an entirety so as to give effect to the mutual intention of the parties. Lovelace v. Protective Assn., 126 Mo. 104; Eaton v. Coal Co., 125 Mo. App. 194; Donovan v. Boeck, 217 Mo. 87. (2) The word "required," as used in the contract between plaintiff and defendants, must be construed to mean "needed." Bowerman v. Mining Co., 98 Mo. App. 316; McKeener v. Iron Co., 138 Pa. St. 184; Hull v. Hollaway, 58 Conn. 210; Park v. Candler, 114 Ga. 466; Miller v. Leo, 35 App. Div. (N. Y.) 589. (3) The filing of the lists with plaintiff was notice to plaintiff of materials needed, and at the end of thirty days from the end of filing the lists, the time for delivery under the contract was fixed.

BOND, C.—Plaintiff, a materialman, on February 17, 1904, sued the defendants, who were general contractors for the construction of the agricultural building for the World's Fair Company, for $6426.30 and interest thereon, alleged to be a balance due for wrought and cast iron materials furnished according to specifications of defendants.

The amended answer of defendants averred that plaintiff entered into a contract with them on March 3, 1903, to-wit:

"St. Louis, Mo., Mch. 3, 1903.
"Messrs. Caldwell & Drake,
        Builders,
                St. Louis, Mo.

"Gentlemen:—We propose to furnish you with all the wrought iron and steel, cast iron, and washers, all according to plans and specifications for the construction of the agricultural building at the World's Fair, all finished complete and ready for erection F. O. B. World's Fair Grounds at site of agricultural building at the following prices; plain rods, up set rods, turn buckles, all bolts, drift pins and other wrought iron of whatsoever kind at $2.55 per 100 lbs. All cast washers, at $1.55 per 100 lbs. All other cast iron where patterns are necessary at $2.20 per 100 lbs. You to furnish us lists of each and every kind of material required at least thirty days prior to the time you require it.

"Upon our failure to deliver goods on time as stated we agree to pay whatever damages you sustain on account of such delay. Terms sixty days net. We further agree to furnish a bond for the faithful performance of our part of this agreement in the penal sum of seven thousand ($7,000) dollars with some responsible bonding company.

                "Respectfully submitted,
                        "MORAN BOLT & NUT MFG. Co.,
                                "JNO. GORMAN, Pres.
"We accept the above proposition.
        [signed]                "CALDWELL & DRAKE,
                                "by GEO. CALDWELL."

That on March 31st defendants "delivered to plaintiff lists for two-thirds of the material required" for the building which the defendants had contracted to erect, that plaintiff did not deliver said material within thirty days after reception of said lists nor the material specified on a list given to plaintiff June 24,

1903, within thirty days thereafter; that said delays damaged defendants in various ways, aggregating $12,000, for which they counterclaim and prayed judgment.

Issue was joined by reply. There was no dispute as to the price or the delivery of materials sued for by plaintiff.

The case was submitted to a referee who recommended judgment for plaintiff's account and interest, and judgment against the several counterclaims filed by defendants. His report is in part to-wit:

"This was a large and complex structure, containing iron of various dimensions and shapes. The lists of March 30th and 31st were for, approximately, five hundred thousand pounds of iron, consisting of over one hundred different sizes and shapes. Very little of this iron was needed until June. Under these circumstances, I do not consider that the mere sending of these lists of March 30th and 31st to plaintiff was a notice to it that defendant would require all the iron mentioned in those lists to be delivered by May 1st. Especially so, considering the facts that defendants conceded the inaccuracies in the lists; that they requested alterations be made in the dimension of certain articles specified in the lists; and that on June 24th a new list was provided as a substitute for the previous lists, and that when the list of March 31st was sent, it was accompanied by the request that the articles specified therein be gotten out before those specified in the list of March 30th; that about April 25th, plaintiff offered to deliver a carload of iron, but defendants refused to receive it, saying they could not then use it; that about May 7th defendants complained to plaintiff that it was sending more washers than had been specified in one of the special orders. Since the only instance in which plaintiff was notified of the time when the material would be required was when the small lists or orders were sent,

plaintiff was not in default unless it failed to deliver the material ordered in those small lists or orders within a reasonable time (not exceeding thirty days). No such failure on the part of the plaintiff was shown.

"Unless the contract of March 3, 1903, is to be construed according to defendants' contention by holding that it required plaintiff to deliver all the materials specified in the lists of March 30th and 31st within thirty days from the furnishing of those lists, then there is no evidence to show any default upon the part of plaintiff. But as I do not construe the contract according to defendants' contention, I find that plaintiff was not in default by reason of any failure to deliver the material according to the terms of the contract.

"Even if the contract of March 3, 1903, were to be construed according to defendants' contention, I still find that defendants are not entitled to recover on their counterclaim, for the reason that their evidence is not sufficient or definite enough upon which to base a judgment, and they have not shown with sufficient clearness that the losses which they claimed to have suffered were due to a default upon the part of plaintiff. Their evidence upon the subject consists only of general impressions that plaintiff was forty to fifty days behind in delivery of iron, but they were unable to give details sufficient to convince me that these statements are more than a mere guess or conjecture.

"The forty or fifty days delay to which they have testified is admitted in their testimony to mean that the iron was not delivered until forty or fifty days after May 1st; this would bring it to June 10th or 20th. I find from the evidence that prior to about June 15th, there was no shortage of iron sufficient to interfere with the work. Defendants have shown that they were obliged to go over the work and replace certain iron work, but they have not proven the

time that this occurred or when the order was given
for the iron which was lacking, and have not shown
with any degree of definiteness the amount of the dam-
ages they have sustained, nor have they proved with
sufficient definiteness the other elements of damage
alleged, nor shown them to have been a direct result
of any default upon the part of plaintiff."

The court, on defendants' exceptions, sustained
the finding for the plaintiff, overruled the referee as
to the disallowance of four items of the counterclaim
of defendants, aggregating $3472.90, and held these
should be allowed and deducted from finding for plain-
tiff, and judgment rendered for the balance in its fa-
vor, $2953.40.

Both parties appealed. The errors assigned and
the appurtenant evidence, as far as necessary, will be
discussed in the opinion.

## OPINION.

I. The first error assigned by the two appellants
is based upon the following language of the accepted
proposal which constituted the contract between the
parties, to-wit: "You to furnish us lists of each and
every kind of material required at least thirty days
prior to the time you require it." Plaintiff insists
this language required defendants when delivering a
list of the various "kind of material required," then
or afterwards, to give notice for at least thirty days
"of the time you require it." On the other hand, de-
fendants argue that the contract would preserve its
full meaning if the words "needed" and "need" were
substituted for "required" and "require," and that
it should read as if thus changed, to-wit: "You to
furnish us lists of each and every kind of material
*needed* at least thirty days prior to the time you *need*
it." And that to give it the meaning which plaintiff
ascribes to it, the words "demanded" and "demand"
must be substituted for "required" and "require."

Bolt & Nut Co. v. Caldwell.

The issue thus formulated by counsel for defendants is accepted by counsel for plaintiff, and the two learned counselors have collated in their respective briefs illustrations showing some of the synonyms of the word "require." This search for synonyms discloses occasions when the term "require," owing to context or circumstances, has been used in a sense varying from its primal meaning. Every word has its own radical meaning which is the symbol of the idea expressed by it. If it had two such meanings, it could not represent one idea. No two terms of the same tongue are absolutely identical in etymological meaning. Synonyms do exhibit those nuances of thought and expression which give variety and vividness to speech and writing; they enrich language by obviating the narrow monotony of reiterated terms and increasing its play and scope by giving expression to all the variations of meaning taken by words when used in a synonymous sense.

The problem in this case is not to declare the delicate graduation of meaning which the term "require" takes when expanded as a synonym, but to ascertain its natural import and accepted meaning in the particular sentence of the contract under review. To do this, the law does not investigate the meaning of words in the abstract but deals only with the concrete meaning in concrete contracts of the words used. All other inquiries are linguistic, not legal quests. To serve its own purpose, the law puts itself in the shoes of the contracting parties and ascertains the natural and accepted sense of the words used in their agreement viewed in the light of the objects had in view and the circumstances surrounding the actors. This rule has been aptly stated by LAMM, J., in Donovan v. Boeck, 217 Mo. l. c. 87, to-wit: "But one main rule is common to the construction of all contracts and to it all others must give way. That rule is to get at the meaning of the contract and enforce its true intendment

as judicially gathered from all its four corners. To this end it is elementary that the subject-matter of the contract, the relations of the parties to that subject-matter and the ordinary meaning of the language used in the contract, pass in review.''

The first meaning of the word ''require'' is ''to demand or request, authoritatively.'' [Standard Dictionary.] This is the idea which it conveys in general speech. By giving it this significance, a clear insight is had into the clause of the contract under review, and a meaning evolved which is in accordance with the natural import of the term, and in harmony with the circumstances surrounding the parties and their objects when the agreement was made. The plaintiff offered to furnish all kinds of nuts, bolts, rods and cast iron and wrought iron material which were to be used by defendants in constructing a large building covering twenty-two acres of ground. It could not have been in the minds of the parties that these different articles would all be wanted simultaneously. Hence, they used the above language to denote that a list of the specified articles should be handed to plaintiff, and who should have thirty days within which to manufacture or provide them ''prior to the time'' the list was required. It was not intended that the submitting of the list should of itself require the delivery of the articles within thirty days.

The erection of such a structure as the Agricultural Building for the World's Fair was well understood by plaintiff and defendants to be a gradual and progressive performance. It could not arise by ''rubbing a lamp'' or other enchantment, but was of necessity a prolonged work, requiring the use of the particular kind and quantity of material appropriate to the successive stages of the erection of an immense structure from beginning until completion. It was essential, therefore, that the agreement should enable the general contractors to get this material when it was

needed in the course of the prosecution of the work, and not before. If it had been dumped on the ground within thirty days after a list covering two-thirds of it was furnished, the contractor would doubtless have been seriously inconvenienced. Hence the wisdom of the plan adopted of requiring notice or demand for its delivery.

We think this was the clear meaning and legal intendment of the contract between the parties as expressed in this clause, and as demonstrated by their environment and their mutual purposes. This conclusion is sustained by a recent precedent closely in point. In the case of Duhamel v. Port Angeles Stone Co., 59 Wash. 171, the decision turned on the meaning of the word "require" as used in a contract between a materialman and a general contractor who *had* engaged to do some construction work for the United States government. By the terms of the contract the materialman engaged to deliver the stone "required" for the structure within thirty days' notice from parties of the second part that the said stone has been accepted by the government as proper material for said building, etc. The evidence showed that the materialman was notified that the government had accepted the character of stone which he had engaged to supply, but no notice or demand was made upon him to commence deliveries of stone. His obligation was to deliver it in such quantities as "required" by the contractor. The contractor thereafter notified the materialman that he was in default in the matter of making deliveries, and that the stone would be purchased elsewhere, and his contract was terminated, and he would be held responsible in damages. The general contractor brought an action against the materialman for damages alleged to have been caused by his delay. The Supreme Court of Washington affirmed a judgment of the trial court in favor of the materialman upon the theory that he was not obligated to deliver stone except upon orders

specifying the quantities and dimensions ''required.''
In arriving at that conclusion the court used the following language: ''Looking to the provisions of the contract, unaided by extrinsic evidence, the question of the Port Angeles Stone Company's obligation to make deliveries depends upon the meaning of the word 'required' as here used. This word 'require' is defined by the Standard Dictionary as follows: '(1) To demand, or to request something of, authoritatively; ask as of right; claim; insist upon; (2) To have imperative need of; render or find indispensable; want.' ''

In the case of Brewster v. Brewster, 52 N. H. l. c. 58, the court observed: ''The verb 'require' is not absolutely the synonym of the verb 'need,' though it is of the verb 'demand.' [Crabb's Synonyms, 228.] Although the verb *require* may, undoubtedly, be properly used in the sense of the verb *need*, such is not its primary nor its usual signification. It comes from the latin *requiro*, compounded *re* and *quaero*—to seek for, or to seek to get back. It means according to all lexicographers, and in very common parlance, to *demand*; or, as Webster defines it, 'to ask as of right and by authority.' '' [See also McReynolds's Appeal, 66 Pa. St. l. c. 111; Miller v. Leo, 35 App. Div. (N. Y.) l. c. 593.]

The case of McKeever v. Iron Co., 138 Pa. St. 184, relied on by counsel for defendants is wholly off the point. In that case the owner of an iron mill had engaged to buy all the coal which he required for his mill for a term of three years from an owner of a coal mine. Subsequently, the mill owner diminished the amount of coal required for fuel by employing natural gas, and purchased the remainder of the coal from a third party. The court held that he was still liable to the owner of the coal mine for failing to buy the limited amount of coal still needed for fuel from him instead of from the third party. Nor do any of the

other cases cited by defendants militate against our ruling in this matter.

II. There was no evidence before the referee that a demand was made of plaintiff which it did not comply with within thirty days thereafter, and he was, therefore, right in disallowing the counterclaim of defendants on the grounds that no liability for delay had accrued against plaintiff under the terms of the contract. The referee further found, as shown by his report, that there was no substantial evidence sustaining the counterclaims of defendants even if they could have been set up in this case. This being a suit wherein compulsory reference might have been ordered, the evidence and the findings of the referee would be open to full review in this court. While the record shows his findings of fact are well supported, it is unnecessary for us to go further into the evidence. For under the contract in this case plaintiff did not prejudicially delay defendants in their construction work, since it is not denied that defendants made no demand for the delivery within thirty days of any of the material specified in their contract with the World's Fair Company and set forth in the lists which were furnished to plaintiff in March and June, 1903, except verbal orders given over the telephone referring to small lots of previously listed articles, which the evidence shows were complied with within thirty days. Plaintiff was, therefore, guilty of no delay which formed the basis of any matter of counterclaim by defendants. The result is the judgment herein is reversed, and the cause remanded with directions to the trial court to find in favor of plaintiff on its cause of action, and against defendants on their several counterclaims, and to enter judgment accordingly. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BOND, C., is adopted as the opinion of the court. All concur.