# THE STATE ex rel. KANSAS CITY v. JAMES EL-LISON et al., Judges of Kansas City Court of Appeals.

### In Banc, April 1, 1920.

1. **CONFLICT IN OPINIONS: Reference to Pleadings and Instructions: Part of Record for Review.** Reference to the pleadings and instructions in the opinion of a Court of Appeals, though it neither outlines the petition or answer nor sets out the substance of the instructions with clarity, is sufficient to make both the pleadings and instructions a part of the opinion for purposes of review upon *certiorari*. Reference to a written instrument by the opinion of the Court of Appeals makes such instrument as much a part of the opinion as if fully set forth therein.
   *Held,* by WALKER, C. J., dissenting, with whom WILLIAMS, J., concurs, that the purpose of the constitutional provisions authorizing the Supreme Court, upon *certiorari*, to review an opinion by the Court of Appeals, was to prevent a conflict between the decisions of the two courts, and cannot be extended beyond that purpose without impairing their constitutional jurisdiction to render final decisions in cases over which they are given appellate jurisdiction; that the review should be restricted to the conflict manifested by the opinion itself; that the Supreme Court's restriction upon its power of review, to pleadings, instructions and documents referred to in the opinion, is purely arbitrary, and can by a like arbitrary ruling be extended to a review of the whole transcript of the testimony and other evidentiary facts.

2. ————: **Attractive Nuisance: Wall About Park.** A wall about a city park, twenty feet in height in places, but its height depending on the topography of the ground, topped with a coping thirty inches wide, is not an attractive nuisance, within the doctrine of the turntable cases, to a child, an invitee of the city, who, in play, enters upon the wall at a low place, and falls from it at its highest place, and the Court of Appeals, in approving an instruction which submitted to the jury that theory of negligence, contravened Kelly v. Benas, 217 Mo. l. c. 13; O'Hara v. Gas Light Co., 244 Mo. l. c. 404, and Buddy v. Union Herminal Ry. Co., 276 Mo. 276.

## *Certiorari.*

WRIT QUASHED.

*E. M. Harber* and *A. F. Smith* for relator.

(1) The trial court erred in refusing to give the peremptory instructions asked by the defendant, and the decision of the Court of Appeals affirming its rulings in that regard is at variance with controlling decisions of this court. (a) A person has a right to use only that part of public property to which he is invited, either expressly or by implication. There being no invitation, express or implied, to use that part of the park on which plaintiff was playing at the time of his injury, the city is not responsible for his injury,. Ely v. St. Louis, 181 Mo. 729; Glaser v. Rothschild, 221 Mo. 185. (b) The city had, and exercised, the right to restrict by ordinance the use of its parks as playgrounds. The ordinance offered in evidence made it unlawful to use that part of the park on which plaintiff was playing at the time of his injury. The plaintiff has never questioned the validity of this ordinance, and it must therefore be given full force and effect. Roper v. Greenspon, 272 Mo. 296. (c) The wall in question was not such an "attractive nuisance" as to constitute an invitation to plaintiff to play upon it. O'Hara v. Laclede Electric Co., 244 Mo. 404, 407.; Kelly v. Benas, 217 Mo. 1; Buddy v. Union Terminal Ry. Co., 207 S. W. 821. (2) Plaintiff's instructions assumed against the defendant facts which were at issue; they were so worded as to confuse the questions at issue, and thus mislead the jury; they placed upon the defendant the duty to exercise a degree and amount of care not required by law, and they submitted issues not properly before the jury. The decision of the Court of Appeals approving the giving of these instructions is contrary to controlling decisions of this court. James v. Mo. Co., 107 Mo. 484; Ganey v. Kansas City, 259 Mo. 663; Hipsley v. K. C. Co., 88 Mo. 354; Baustian v. Young, 152 Mo. 325; Young v. Webb City, 150 Mo. 341, and cases supra.

*Isaac B. Kimbrell* and *Martin J. O'Donnell* for respondent.

(1) The opinion of the Court of Appeals, in construing the ordinance mentioned in the opinion, is not in conflict with any prior decision of this court for the reason that this court has never construed said ordinance. State ex rel. v. Sturgis, 276 Mo. 599. (2) The opinion is not in conflict with that of this court in Ely v. St. Louis, 181 Mo. 723, for the reason that this court in that case found that the place alleged to be a public street in that case was not, while here the opinion finds that the coping from which plaintiff fell was included in the public park and that plaintiff had been invited to use the coping and that he fell into the chasm or precipice which the defendant negligently failed to fence. Under the authorities the verdict was therefore for the right party. Healy v. City, 211 S. W. 59; Kuenzell v. City, 212 S. W. 876; Carey v. City, 187 Mo. 715; Capp v. St. Louis, 251 Mo. 256; Jenson v. City, 181 Mo. App. 359; Longwell v. City, 203 S. W. 657. (3) The claim by relator that this is a "turntable case" and that this court has concluded not to allow a child to recover in the future when he invokes that doctrine is contradicted by the opinion which expressly finds that the plaintiff was using the park and the coping, which was part of same, under the rules provided by the park board and at the invitation of relator. Furthermore, the turntable doctrine, though badly bent by some recent decisions of this court, is not yet broken. Carey v. City 187 Mo. 715; Bjork v. City, 135 Pac. 1009; Price v. Water Co., 58 Kan. 551; Pekin v. McMahon, 45 Am. St. 114, 154 Ill. 141. (4) Even had the trial court in its instructions assumed that certain facts put in issue by the pleadings were conclusively established by the evidence, yet an opinion approving such instructions would not conflict with the prior decisions of this court, but would be strictly in accord with same. Fullerton v. Fordyce, 121 Mo. 113; Davidson v. Transit Co., 211 Mo.

356; Donovant v. Co., 188 Mo. App. 93; Ragan v. Railway, 144 Mo. 623; Setebier v. Railway, 203 Mo. 702. (5) This court on *certiorari* cannot properly quash a judgment of the Court of Appeals for failure to reverse because of the giving of instructions, for it often happens that the appellate court finds that the verdict is for the right party, and in such case the statute and the common law prohibits a reversal because an erroneous instruction may have been given. Thompson on Charging the Jury, secs. 117, 118; Sec. 2082, R. S. 1909; State ex rel. v. Reynolds, 270 Mo. 589. (6) The relator's abstract of the record does not include the judgment of the trial or appellate court, nor does it include the record entries of the Court of Appeals, and consequently this court on scrutinizing the record will dismiss the case on its own motion. State ex rel. Pedigo v. Robertson, 181 S. W. 987; Huston v. Allen, 236 Mo. 645; Hays v. Foos, 223 Mo. 423.

GRAVES, J.—*Certiorari* to the Kansas City Court of Appeals. By this proceeding it is sought to have this court quash the judgment of the Court of Appeals in the case of Russell Barnett, by next friend, respondent, v. Kansas City, appellant.

The opinion of the Court of Appeals neither outlines the petition nor answer in the case, although reference, in a way, is made to both. Nor is the substance of the instructions considered by the opinion set out with clarity in the opinion. In the opinion we find this brief reference to the instructions:

"Defendant has presented a great number of criticisms to the instructions given for plaintiff. Instruction No. 1 covers the case as made by plaintiff and we do not find any substantial objections to it. It is supported by the petition and the evidence.

"Instruction No. 2 is no more than a harmless abstract statement of the law. The only objection made is that it is said to compel the city to keep all parts of the park reasonably safe for children. We must

read the instruction in connection with the evidence. There is no dispute as to the parts of the park where children usually played and where plaintiff was playing when hurt, and, allowing to the jury any common sense, they knew the question was whether care and prudence required defendant to have it reasonably safe at those places; and that was stated in Instruction No. 3.

"That instruction submitted whether the coping at the place where plaintiff was playing was attractive to children as a part of the recreation ground. That was no more than submitting to them whether it was not a part of the park likely to be chosen by children who frequented the grounds in quest of amusements they were permitted to enjoy there.

"Instructions Nos. 4 and 5, relating to the definition of negligence and the measure of damages, are not objectionable.

"Six instructions were refused for defendant. If what we have written is correct, they were properly refused. They consisted chiefly in absolute declarations as matters of law and were in practical effect demurrers to the evidence."

The evidentiary facts of the case are thus set out in the opinion:

"Plaintiff, a boy eight years of age, instituted this action through a next friend, for damages resulting in serious injury to him by falling from the top of a retaining wall to the street below, a distance of nearly twenty feet. He recovered judgment in the trial court.

"At an elevated place within its limits the defendant city maintains a large reservoir which has a tract of land surrounding it, set apart and maintained by the city as a public park, known as 'Observation Park.' The reservoir is enclosed with a wire fence and around it is a gravel walk about six feet wide. The topography of the ground and the grading of the streets about it left precipices. These were supported by high stone walls topped with coping about 30 inches wide. At least one stone stairway led up from the street to the reservoir.

There were seats in the park space and the public were free to go there at will. Band concerts were given of evenings, when thousands of people, half of them children, would attend. Children were in the habit of playing there. It was common for them to 'run races' on the gravel walk around the reservoir, and to walk around on the coping. A watchman in charge knew this. There was evidence tending to show that the watchman ordered boys to keep off the grass and the rock wall. A boy twelve years old testified that boys, including himself, played at that part of the park. That he had lived near there 'quite a while and used to play there all the time.' That at the time plaintiff was hurt, the boys 'were divided into two armies and had been playing soldier about an hour and a half or more before he [plaintiff] got hurt.' There was also evidence tending to show that the watchman at other times than the time in question ordered the boys to keep off the grass. That at times when boys would get on the wall he (the watchman) would run them off and tell them to stay off, 'that we would get hurt—once in a while maybe.' On the day of his injury, a number of boys, including plaintiff, were playing 'American Soldier,' and this included running on the top of these retaining walls. They were higher in some places than others and in some parts the ground sloped up from the top of the wall to the reservoir. At a place where it was about twenty feet down to the paved street plaintiff was on the wall engaged in the play, when, as he testified, 'another boy started to come along and I thought he was going to hit me and stepped backward and stepped off,' falling to the bottom.

"There was abundant evidence tending to show knowledge on the part of the city that children were in the habit of playing in the park, and we readily approve of the action of the trial court in refusing defendant's demurrer to the evidence."

This is the outline as gathered from the opinion, but the horizon broadens when we go to the pleadings and instructions referred to in the opinion.

The negligence charged is thus stated in the petition:

"Plaintiff further states that it was the duty of defendant to exercise reasonable care to prevent injury to patrons of said park; to erect and maintain a proper and sufficient fence and guards at or near the edges of said precipice so created by said parkway and said coping, and particularly at and near the southeast corner of said block, near the intersection of said Twenty-first and West Prospect streets, to prevent children engaging in playing or walking in said parkway and on said coping from falling over the precipice to said Twenty-first Street and being killed and injured, and also to have said parkway and coping properly watched and guarded, to prevent children from falling over said precipice.

"Plaintiff further states that defendant negligently failed to provide any fence or protection whatsoever on the said coping and between it and said park and parkway, and negligently failed to have same properly watched or guarded for the protection of children, as aforesaid."

After a general denial, and a plea of contributory negligence, the answer, thus proceeds:

"Defendant further says that by Section 1046 of the Revised Ordinances of Kansas City, approved February 2, 1910, it was provided that 'no person shall play any game whatsoever in or upon any of the parks, boulevards, avenues, streets, parkways or park roads under the control of the Board of Park Commissioners; provided, however, that ball, cricket, lawn tennis and other games of recreation may be played upon such portions of said parks as may be designated from time to time by the Board of Park Commissioners, and under such rules and regulations as may be prescribed by said Board. The grass plots or lawns of public park and parkways shall not be used by any person as thoroughfares in crossing from one roadway, walk or street to another roadway, walk or street,' and that the use of

43—281 Mo.

public parks or parkways as pleasure grounds by the people for the purpose of recreation must be under such reasonable rules and regulations as may be prescribed by the Board of Park Commissioners.

"Defendant further says that the Board of Park Commissioners never provided any rule or regulation permitting persons to play, or use for the purpose of recreation, or otherwise, that part of the ground upon which plaintiff was playing at the time he claims to have been injured, and under rules and regulations of said Board of Park Commissioners, playing at the place where plaintiff was playing at the time he claims to have been injured was against the rules and regulations of said Board of Park Commissioners.

"Defendant further says that by Section 1058 of said Revised Ordinance, it was made a misdemeanor for any person to violate any of. the provisions of said Section 1046.

"Wherefore, having fully answered, the defendant prays to be dismissed with its costs."

That portion of the answer is referred to in the opinion.

Divers conflicts between this opinion and our opinions are suggested in the petition for our writ, and the brief for relator. These, and further facts, we leave for the opinion.

I. The scope of our review becomes important in this case. The opinion before us from the Court of Appeals is limited in its reference to the pleadings, and to the instructions. There is, however, direct reference to each. This suffices to make them and each **Reference to Pleadings.** of them a portion of the opinion for the purposes of this review. Reference in the opinion to a written document in the case, makes it as much a part of the opinion, as if fully written out therein.

For consideration of the petition in full, we have direct authority in State ex rel. v. Ellison, 176 S. W. 1. c. 12. This opinion has the concurrence of four judges, and on the question here involved, really of six judges.

It will be noted that whilst BOND, J., dissented, he dissented on the "question of our jurisdiction only." BLAIR, J., was not sitting, but his own writings later, and his votes later so place his views.

In State ex rel. v. Robertson, 188 S. W. l. c. 102, we had upon *certiorari* an opinion of the Springfield Court of Appeals. It referred to a previous opinion of such court in the same case. We held that this reference made such previous opinion a part of the opinion brought up by our writ of *certiorari*. In this all the judges In Banc concurred, except WOODSON, J., absent, although BOND, J., concurred only in result.

The next case in order is that of State ex rel. v. Ellison, 191 S. W. l. c. 53, whereat BLAIR, J., said:

"The order of publication is not set out in the opinion. Nevertheless, it is expressly referred to and made the basis of a distinct holding. The effect of this is to incorporate it in the opinion and require that it be treated and examined as a part of it. No one would doubt that any court in citing and applying the decision on this point would be under the necessity of consulting the record and construing the opinion in connection with the order of publication the record shows. If a reference of this sort in an opinion does not, in accordance with the general rule, warrant this court in treating the matter referred to as thereby made a part of the opinion for the purposes of writs like this, then the harmony of decision required to be maintained means only a surface harmony which may disappear as soon as it it determined what the opinion under examination really means. Such a result is unreasonable. The order of publication is to be held incorporated by reference."

This case had the concurrence of all the judges except FARIS, J., not sitting. BOND, J., as usual in these *certiorari* cases (about this time), concurred in the result.

Following this is the case of State ex rel. v. Ellison, 195 S. W. l. c. 722, whereat we said:

"The record is somewhat broadened because the opinion before us refers specifically to the two previous

opinion for the facts. We have, therefore (by this reference in the last opinion), not only the three opinions of the Court of Appeals, but likewise such records and evidence as are incorporated therein, either by reference or by direct quotation. Under these circumstances, it would be indeed singular if the complete record in the Court of Appeals was not before us through their several opinions.''

This opinion had the concurrence of all the judges In Banc, except WILLIAMS, J., not sitting, and BOND, J., who dissented. It will be noted that FARIS, J., who was not sitting in the case written by BLAIR, J., supra, concurs in this opinion.

Next in line follows the case of State ex rel. v. Robertson, 197 S. W. l. c. 79, where we again held that a previous opinion of a Court of Appeals was made a part of the opinion before us, because it was directly referred to therein. We thus ruled over objection duly made here, and in so ruling said:

"The case of Allen v. Quercus Lumber Co., has been twice before the Springfield Court of Appeals. The first opinion, which reversed a judgment for plaintiff, is found in 190 Mo. App. 399, 177 S. W. 753. The second opinion, the one brought up by our writ, is found in 190 S. W. 86. We mention both opinions because the latter refers to the former for a statement of the facts as to how the plaintiff was injured. Respondents urge that the first opinion is not before us, but the reference thereto in the second opinion both in law and in fact makes it a part of the second opinion.''

This opinion was concurred in by all the judges, except FARIS, J., who dissented. BOND, J., as usual in this character of cases, concurred only in the result.

So runs the case law of the State until our lamented Brother Bond (whose opposition to our jurisdiction in this class of cases is manifest from the books) wrote State ex rel. Wahl v. Reynolds, 199 S. W. 978. In that case (with an eye always single to the curbing of our jurisdiction in *certiorari* cases) our late lamented and distinguished brother, said:

"In the rulings of this court permitting the use of a writ of *certiorari* in cases like the present (in which I am unable to concur), it is distinctly announced, as I understand, that the scope of review does not extend to any errors of opinion on the part of the Court of Appeals which do not conflict with the latest previous rulings of this court on the subject, nor does it embrace any consideration of the record of the case in the Court of Appeals further than the same is set forth in the opinion under review."

In this opinion he had the concurrence of three other judges at that time. Note the use of the words "set forth" in the language of our learned brother. This of itself does not exclude the idea that an instrument which is clearly referred to in the opinion is not "set forth" in the opinion, as our previous cases had all held. But later our brother WILLIAMS in State ex rel. v. Reynolds, 200 S. W. l. c. 1041, cited and quoted the foregoing language from Wahl's case, supra, and with two judges not sitting, he received only one concurrence to paragraph one of his opinion which covered this question. The present writer's individual views are expressed in a concurring opinion, 200 S. W. l. c. 1041. Whereas we were not certain what Judge BOND meant by the words "set forth" in Wahl's case, we were taking no chances on approving the language. We had dissented in Wahl's case, as we had two others.

By a scant majority of the court, we have ruled that in *certiorari*, we will go to the opinion of the Court of Appeals for the evidentiary facts and the things determined, but we have all the while ruled that reference to a written instrument by the opinion made such instrument as much a part of the opinion as if fully set out therein. This ruling should not be disturbed, nor does Wahl's case in language disturb it. The case at bar is a splendid example of what would happen if this rule should be abolished. No one could tell from the opinion before us what grounds of negligence were relied upon by the plaintiff. So too the instructions are referred to by number, but

with much diligence you could not find from the opinion what was in instruction one and two for plaintiff. It is said that Instruction No. 3 for plaintiff submitted the question as to whether or not the wall and coping was attractive to children. We do not say this by way of criticism, but as illustrative of the point, that we should include as a part of the opinion all instruments referred to in such opinion. If our rule remains as we have written it, no harm comes from this short method of opinion, because we examine the pleadings and the instructions referred to in such opinion. We rule that we should go to the pleadings in this case, and also to the instructions, because they are in law and fact a part of the opinion by reason of the direct references therein.

The pleadings may be examined even on another theory. See concurring opinion in State ex rel. v. Reynolds, 200 S. W. l. c. 1041. An interesting review of our cases upon *certiorari* up to August 23, 1916, is found in an able article by Hon. J. P. McBaine, in 13 Law Series, Missouri Bulletin, from pages 30 to 75 inclusive.

II. It will be gathered from the petition that there were two grounds of negligence charged against the city, (1) failure to put a fence on the coping so as to keep persons using the coping from falling therefrom, and (2) Negligence failure to have such coping properly watch-Charged. ed and guarded. Instruction one for plaintiff, which the Court of Appeals says covers the case, omits the second ground of alleged negligence, and predicates the right of the plaintiff to recover solely on the failure to have a fence upon such coping. The evidence as finally stated in the court's opinion discloses that the city did have a person there who warned children not to play on the coping. This perhaps accounts for the abandonment of this alleged ground of negligence. As to evidentiary facts we shall confine our case to the facts found by the Court of Appeals. So that from this and the preceding paragraph may be gathered the full scope of our review upon the question of conflict of opinions.

III.   In this case we need not go beyond the opinion of the Court of Appeals, construed even in the restricted sense of State ex rel. Wahl v. Reynolds et al., supra.   In so saying we do not want to be understood as departing in the least from our rulings in paragraph one of this opinion.   On the contrary we wish to reiterate that all documents (whether pleadings, instructions or other written documents) referred to in the opinion, are just as much a part of the opinion as if written out therein *in haec verba.*

The opinion says that Instruction No. 3 for the plaintiff presented to the jury the doctrine of the turntable cases, i. e. "an attractive nuisance."   Whilst the opinion is not very explicit, we have examined the instruction, and in fact the instruction does present such a theory of recovery, and the petition charges that the coping was attractive to children, and bottoms the right to recover on the negligence of a failure to fence, or a failure to guard it.   The latter, as said, was dropped by plaintiff at the trial, as evidenced by the instructions.

From the facts may be gathered the idea that the city had enclosed the block constituting "Observation Park" by stone walls, whereever the same were required by the topography of the ground.   At places the wall was near 20 feet high, but in plain and open view of all who might be on the premises.

At most the opening of the park by the city, if in fact it had been fully opened to the public, would make the plaintiff at best but an invitee of the city.   On the theory that the portion of the park where the accident occurred had been opened to the public (a fact that the city denied and offered an ordinance in support of its denial) the plaintiff was in the park as an invitee.   He was one invited there by the city.   In such case the well defined turntable doctrine of an attractive nuisance has no application to the facts of this case.   That there might be an attractive nuisance on the premises of one who invites the public is not questioned, but what we mean is that a wall which encloses the premises, as did the wall

in question here, is not in law an attractive nuisance, and for that reason this case does not fall within the doctrine of the turntable cases.

To the invitee is owed the duty of exercising reasonable care for his safety. He must be guarded against hidden pitfalls and dangers not open and glaring, but the doctrine of the turntable cases is that the instrument itself invites the child, and is usually found in cases where the child is a trespasser or at most a mere licensee. The real question is whether or not a wall which incloses one's premises is such an instrument as to bring it within the purview of the turntable cases, the doctrine of which was invoked by plaintiff's instruction three, supra.

In many places in this, the capital city of Missouri, are walls enclosing private residences, which walls vary in height with the topography of the ground. Should one of these owners invite the children of his neighborhood to play upon his lawn, would he be liable on the ground of maintaining an attractive nuisance? We think not. Yet those children would be as much invitees as is the general public to a park opened up by the city. The fence around this park, which is the walls which enclose it, is not such as to place it within the category of an attractive nuisance, which is the theory of instruction three for the plaintiff. •

We but repeat and emphasize the language of LAMM, J., in Kelley v. Benas, 217 Mo. l. c. 13, whereat he most eloquently said:

"If the old channel of the law is to be quite changed by the application of the new doctrine automatically and without discrimination, if sentimental considerations (however elevated and tender) are to usurp the place of cold and calm reason as the foundation for rules of law, then the floodgate now damming back liability will be raised, letting in strange and deep waters for the landowner to struggle with."

He was not dealing with an invitee, but he was dealing with things which do and which do not constitute an attractive nuisance within the meaning of the turntable

cases, and holds a pile of lumber (quite high in that case) was not within the turntable rule.' A high pile of lumber, so placed as would permit boys to climb upon it, is no less attractive than the wall in the case before us, yet LAMM, J., ruled that it did not fall within the turntable rule, as an attractive nuisance. The action of the Court of Appeals in approving instruction three conflicts with the Kelly-Benas case. In so ruling we have in mind the sole question of what constitutes such an attractive instrumentality as to bring it within the turntable rule.

In our judgment it likewise conflicts with O'Hara v. Gas Light Co., 244 Mo. 1. c. 404 et seq. At page 405 we then said:

"As above indicated our court has followed the middle ground, and has been exceedingly slow to enlarge the field of the 'turntable doctrine.' For a full review of all our cases beginning with the Overholt-Vieths case, cited supra, see the recent case of Kelly v. Benas, 217 Mo. 1."

When we used the words "as above indicated" we were referring to the classification of states upon the turntable doctrine as made by the court in Brown v. Salt Lake City, 33 Utah, 1. c. 236, whereat it was said:

"In some states where the doctrine prevails the courts have sought to limit its application to open and dangerous machinery and appliances. Of this class Sullivan v. Huidekoper, 27 App. Cas. (D. C.) 154, 5 L. R. A. (N. S.) 263; Overholt v. Vieths, 93 Mo. 422; Richards v. Connell, 45 Neb. 467, and Stendal v. Boyd, 73 Minn. 53, are fair examples."

This court has consistently refused to extend the turntable doctrine. The Court of Appeals, in the face of our ruling, has extended it. For a full review of all the cases see the recent opinion of FARIS, J., in Buddy v. Union Terminal Ry. Co., 207 S. W. 821. This review of our State law is so recent that another at this time would be unpardonable in an opinion, where brevity should be sought. It is sufficient to say that the ruling of the Kansas City Court of Appeals in sustaining instruction three for plaintiff in the instant case, controverts the

rule announced by this court in each of the three cases, supra. In other words, an enclosing wall of a tract of ground is not an attractive nuisance within the rule fixed by this court. For this their record and judgment should be quashed.

There are other matters suggested, and some of them are well worthy of consideration, but as our present ruling is such as to compel the Court of Appeals to reverse and remand the cause, the other questions may be obviated on a retrial. In this kind of a proceeding we are not instructing trial courts. We are simply determining conflict of opinions. If we find there is a conflict upon a question which would of necessity reverse the action of the Court of Appeals, as here, then we need seek no further reason for quashing its record and judgment. Let the record of the court of Appeals be quashed. *Blair, Goode* and *Williamson, JJ.,* concur; *Walker, C. J.,* dissents, in opinion filed, in which *Williams, J.,* joins; *Woodson, J.,* not sitting.

WALKER, C. J. (dissenting).—Whatever may heretofore have been defined by this court as the limit of our review in *certiorari* proceedings when directed against the Courts of Appeals, I have reached the conclusion that our inquiry should be confined to the opinions of those courts. The Constitution and the statutes in no uncertain terms declare definitively the respective jurisdictions of the Supreme Court and the Courts of Appeals. The line of demarcation between these jurisdictions is not difficult to determine. Each within its own prescribed limits was intended to be supreme. The supremacy of the jurisdiction of the Supreme Court ends, however, where that of the Courts of Appeals begins. If this were not true the latter courts would not be courts of last resort within their prescribed province. That they are such courts is evident not only from express constitutional declaration, but from the fact that, although the Supreme Court is given general superintendence over subordinate courts, with the right to issue original

and remedial writs, including *certiorari,* the framers of the Constitution, recognizing the supremacy and final determinative power of the Courts of Appeals of Appeals in regard to their own opinions, found it necessary to expressly declare when and how the Supreme Court was empowered to review the opinions of the Courts of Appeals. The power thus conferred constituted an exception to the general jurisdiction of these courts and should be strictly construed. The reason of the law, however, is the life of the law; and the reason of this exception was to prevent a conflict between the rulings of the Supreme Court and the Courts of Appeals. Such rulings are given authoritative expression only in the opinions of these courts. To these, therefore, we must refer to determine if a conflict exists. Take, for illustration, the opinion of the Court of Appeals in the case at bar; if it discloses no conflict with former decisions of the Supreme Court, then within the meaning of the Constitution such conflict does not exist. If other meaning than this was intended by the organic limitation, then there does not exist any final jurisdiction of the Courts of Appeals. Granted the power to review anything referred to but not ruled upon in the opinion of the Court of Appeals that may give heart to the hope that a conflict may be found, and the entire record of the trial court is rendered subject to review. My learned brother has, it is true, in the majority opinion in declaring what constitutes the exploratory examination of the Supreme Court, limited the same to papers or documents referred to in the opinion under review. This limitation, however, under our construction of the Constitution, is purely arbitrary. If authorized to look to any paper referred to in such opinion, by which I understand is included not only documents in evidence but pleadings and instructions, then by what system of reasoning can the transcript of the testimony be excluded from consideration. There is as much authority, so far as the constitutional provision is concerned, for referring to the one as to the others.

Such a construction destroys the distinctive character of the proceeding at bar and substitutes in its stead

a, rehearing by the Supreme Court of the case finally determined in the Court of Appeals. This conclusion is based upon no technical construction of the Constitution. It finds its sufficient support in that commendatory feeling of confidence which should be and is entertained by the Supreme Court in regard to the correctness of the findings of the Court of Appeals as disclosed by its opinion. That confidence cannot be construed as otherwise than violated if the constitutional limitation be ignored. The importance of preserving inviolate, as by the law prescribed, the respective jurisdictions of the Supreme Court and the Courts of Appeals has impelled me to dissent to the majority opinion and to conclude that our writ should be quashed. *Williams, J.,* concurs herein.