# THE STATE ex rel. STUDEBAKER CORPORATION OF AMERICA v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

### Division Two, December 8, 1922.

1. **CERTIORARI: Opinion of Court of Appeals: Reference to Contract.** Upon *certiorari* to a court of appeals based upon a conflict of its decision with previous decisions of the Supreme Court, reference in its opinion to a certain contract between the parties makes the whole contract, both those parts quoted and those not quoted, a part of the opinion.

2. ————: **Agent's Profits: Failure to Deliver: For Any Cause.** A manufacturing company by written contract agreed to allow an agent seven per cent discount on all of its automobiles above a certain number the dealer would sell, and the dealer sold that number, and after the contract was cancelled tendered to the company the price of six automobiles and claims seven per cent profit, as damages, for the company's failure to deliver them. The company by the contract agreed to use its best endeavors to deliver automobiles to the dealer in accordance with his orders, "but if from any cause the company shall fail to make such deliveries, the company shall not be liable for any damages by reason of such failure to deliver, nor for any loss of profits." *Held*, that the words "for any cause" do not presuppose the existence of some cause for failure to make deliveries, but imply that the company could refuse to deliver for "no cause," and the Court of Appeals in deciding to the contrary and in holding that the dealer was entitled to seven per cent as damages for the company's failure to deliver the six automobiles, contravened many decisions of the Supreme Court to the effect that the intendment of the parties is to control in the construction of a contract.

3. ————: ————: ————: **Cancellation.** Where the contract provided that the dealer should pay the manufacturing company "cash upon delivery" of automobiles, and that either party might cancel the contract "without cause upon ten days' notice mailed to the other, provided, that for any violation hereof by either party, the other party may terminate this agreement immediately on like notice," and further provided that "if for any cause the company shall fail to make deliveries" to the dealer in accordance with his orders "the company shall not be liable for any damages

by reason of such failure to deliver, nor for any loss of profits;" and the dealer having received three automobiles and mailed its check for the price, its stoppage of payment of the check, upon hearing that the company intended to cancel the contract, was a palpable violation of its terms and authorized its immediate concellation by the company; and its cancellation by its express terms becoming effective immediately, the dealer, upon a tender, after receiving notice of such cancellation but before the expiration of ten days, of the list price of six automobiles, and the company's failure to deliver them, was not entitled, as damages, to an amount equal to seven per cent of the list price which by the terms of said contract he would have received had the contract not been cancelled and the automobiles delivered. And the Court of Appeals, in deciding that the cancellation of the contract did not become effective for ten days after the dealer received notice and that he was entitled to said seven per cent as damages, perverted the plain provisions of said contract, and construed it directly contrary to the intent and purpose of the parties, and thereby contravened many decisions of the Supreme Court.

## *Certiorari.*

RECORD QUASHED.

*Warner, Dean, Langworthy, Thomson & Borders* for relator; *John F. Cotter* of counsel.

(1) This court in determining whether the decision of the Court of Appeals is in conflict with the decisions of this court, may consider the pleadings and the entire contract referred to in the opinion of the Court of Appeals. State ex rel. v. Reynolds, 235 S. W. 88. (2) The Court of Appeals in construing the dealer's contract in question has failed to follow the decisions of this court with reference to the rules for the construction of contracts. The Court of Appeals in its opinion construed the contract in question directly contrary to the plain provisions and terms of the contract, and directly contrary to the plain intent of the parties thereto. In so doing the Court of Appeals ignored and failed to follow

the following decisions of this court announcing the correct rules for the construction of contracts: Mecartney v. Trust Co., 274 Mo. 224, 238; Donovan v. Boeck, 217 Mo. 87; Bolt & Nut Co. v. Caldwell, 240 Mo. 365; Arensmeyer v. Insurance Co., 254 Mo. 380; Liggett v. Bank, 233 Mo. 601. The decision of the Court of Appeals is also in direct conflict with the decision of the Circuit Court of Appeals for the Third Circuit construing the very contract in question. Studebaker Corporation of America v. Wilson, 247 Fed. 403. Under the very terms of the contract in question, and under the rules and decisions announced by this court in reference to the interpretation of contracts, the Court of Appeals should have declared as a matter of law that the Holliday Company was not entitled to recover upon its counterclaim, and that the Studebaker Corporation was entitled to recover as a matter of law upon its petition.

*Orestes Mitchell* and *Groves & Watkins* for respondents. .

(1) The Court of Appeals properly affirmed the action of the lower court in overruling plaintiff's demurrer to the counterclaim of Holliday Motor Car Company, where the "transaction" originated in a contract. The defendant may recover for breach of the contract by way of counterclaim, although plaintiff's action be in tort. Ritchie v. Hayward, 71 Mo. 560; McCormick Harvesting Machine Co. v. Hill, 104 Mo. App. 544, 551; Ruth v. McPherson, 150 Mo. App. 694, 704; Collins v. Leather Co., 196 Mo. App. 611. The counterclaim of the Holliday Motor Car Company is based on the same contract and arises out of the same transaction upon which the relator relied as a basis for its action (2) The court properly allowed the Holliday Motor Car Company to recover on its counterclaim, not only the money it had up with the Studebaker Corporation on deposit account, but also discounts earned on cars delivered on the con-

tract, and discounts on cars to which it was entitled under the contract and which it was fraudulently deprived of. Laswell v. Handle Co., 147 Mo. App. 497. (3) The courts of Missouri, in construing contracts, give such a construction as will be reasonable and fair between the parties and will not give one an unfair advantage over another. Relator asks the court to assist it in the perpetration of a fraud and to give it an unfair advantage. Mecartney v. Trust Co., 274 Mo. 238. Respondents contend it is immaterial what construction be placed upon the dealer's contract. In addition to a counterclaim for money on deposit with the relator, and in addition to a parts account, which the relator owed the Holliday Motor Car Company, the Holliday Motor Car Company based another item of its counterclaim on actual fraud of the relator, who had taken orders for cars, which in fact, were fraudulently withheld from the Holliday Motor Car Company, and turned over to the Robidoux Motor Company, which was organized by J. W. Holliday, who was general agent of the relator at the time. While the counterclaim arose out of the same transaction, yet it was not based upon any interpretation of the contract. It was based upon the actual fraud perpetrated on the Holliday Motor Car Company by the relator and its general agent, J. W. Holliday. It is elementary that "collusions of any wrongful sort between A and B to impair the rights of C makes another case of fraud in the way of circumvention." The counterclaim was based upon actual fraud and collusion to the injury of the Holliday Motor Car Company. Substantial evidence was offered in support of the fraudulent misconduct of the relator. The court will not assist one in perpetrating a fraud or allow him the benefit of his fraudulent acts. 27 Corpus Juris, p. 7; Denny v. Kile, 16 Mo. 450; Day v. Graham, 97 Mo. 398; Sedalia Board of Trade v. Brady, 78 Mo. App. 585; Young v. Gans, 134 Mo. App. 166; Haggerty v. Ia. Mfg. Co., 143 Mo. 238; Whitmore v. Supreme Lodge, 100 Mo. 36; Knight v. Linzey, 80 Mich.

396, 8 L. R. A. 476. (4) The only matters to be passed upon by the Supreme Court on *certiorari,* are matters of record proper. State ex rel. Armour Packing Co. v. Stephens, 146 Mo. 662; State ex rel. Summerson v. Goodrick, 257 Mo. 40. (5) It will not consider any evidence admitted in the action even though included in the return to the writ. Ward v. Board of Equalization, 135 Mo. 309; State ex rel. Brema v. Walbridge, 62 Mo. App. 162.

HIGBEE, P. J.—*Certiorari* to quash the judgment of the Kansas City Court of Appeals, in the case of Studebaker Corporation, appellant, against the Holliday Motor Car Company. The opinion states the facts, issues and rulings thereon, as follows:

"This is a suit in conversion. The action was instituted by plaintiff (the Studebaker Corporation) April 15, 1916, in the Circuit Court of Buchanan County, against defendant, Holliday Motor Car Company, a corporation, and Henry Wyatt, personally, to recover the value of three automobiles alleged to have been converted by defendants, of the value of $2372.06, for which a check was given by defendant Holliday Motor Car Company, and upon which payment was stopped.

"Defendant Wyatt filed a separate answer in the nature of a general denial. The Holliday Motor Car Company filed a separate answer in the nature of a general denial and a counterclaim, praying for the cancellation of its said check held by the plaintiff and for judgment in the sum of $931.76. At the close of the case a demurrer was sustained as to defendant Wyatt. Verdict and judgment were in favor of defendant Holliday Motor Car Company, and against the plaintiff, and a further finding in favor of defendant and against plaintiff upon its counterclaim in the sum of $900.

"On February 29, 1916, defendant Motor Car Company purchased three Studebaker motor cars of plain-

tiff for $2369.31, which said cars were delivered to the defendant company and in payment therefor a check was issued, signed Holliday Motor Car Company, by Henry Wyatt, president, and upon which payment afterwards was stopped. Thereafter plaintiff, through its agent, J. W. Holliday, demanded that defendants return said automobiles, which demand was refused. The petition alleges that defendant wrongfully converted said cars to their own use.

"Defendant Holliday Motor Car Company, in its answer and counterclaim, alleged that defendant controlled the agency for the Studebaker automobiles and parts manufactured by plaintiff, and that this agency was exclusive in certain territory named, and for which said agency defendant held a contract; that by the terms of said contract plaintiff was to deliver all automobiles and parts thereof which defendant should order, and that defendant hired salesmen, mechanics, etc., and incurred other great expense to operate the business of selling plaintiff's cars, etc., and said contract between plaintiff and defendant became effective July 1, 1915, and continued in force until cancelled by plaintiff by letter from its main office at Detroit, dated March 9, 1916. Defendant further stated that it gave its check for $2369.31, in payment of the three cars in question, but that after execution and delivery of the check it learned that plaintiff intended to cancel the contract with said defendant, and the payment of the check was stopped.

"The answer and counterclaim further alleged that defendant demanded of plaintiff that it fulfill its contract in regard to delivering the cars already ordered, which plaintiff refused to do; that although defendant had given plaintiff its check for $2369.31, no such sum was due plaintiff, because defendant had a large cash deposit with plaintiff, and because additional commissions due defendant had not been paid by plaintiff to defendant; that defendant had ordered certain automobiles from plaintiff to fill orders already taken, and had

tendered cash for same, and that said tender was refused. The prayer of the answer and counterclaim was for judgment for $931.75 and interest, and for an order cancelling the check for $2369.31.

"Plaintiff duly demurred to the separate answer and counterclaim, and also filed a motion to strike out certain parts of said answer and counterclaim, both of which motions were by the court overruled.

"During the progress of the trial defendant Holliday Motor Car Company, by permission of the court, amended its said answer and counterclaim by interlienation, as follows: 'That the plaintiff fraudulently refused to deliver said cars and fraudulently cancelled said contract at the time it did for the sole purpose of preventing this defendant from receiving the discounts provided in said contract for the purchase of seventy or more cars by defendant under said contract and before its cancellaton.' This amendment was permitted by the court over the objections of plaintiff.

"The contract in question provided, among other things, that defendant make deposit with plaintiff, and maintain same during the continuance of the agreement, but upon termination of the agreement the balance of the deposit should be returned to defendant. Further the contract provided that plaintiff retain the right to sell automobiles manufactured by it in the territory allotted to defendant, and if it did make such sales it was liable under the terms thereof to pay defendant a commission thereon. A further proviso stated that the contract could be cancelled by either party 'without cause, upon ten days' written notice mailed to the other party; provided, however, that for any violation thereof, by either party, the other party may terminate this agreement immediately on like notice.'

"The contract also provided a schedule of additional discounts as follows: That if defendant should sell four to eight cars it would be entitled to an additional discount of one per cent; from 9 to 14, two per cent; 15 to

25, three per cent; 25 to 34, four per cent; 35 to 49, five per cent; 50 to 69, six per cent; 70 or more, seven per cent of the total number of cars sold.

"Pursuant to the contract, the life of which was one year, and up to February 29, 1916, defendant sold sixty-four cars. The purchase of seven cars which defendant alleged it had orders for, if delivered, would entitle it to the seven per cent additional discount provided for in the contract.

"Notice was mailed by plaintiff from Detroit, March 9, 1916, advising defendant that under the terms of the contract the same was cancelled. The notice was received by defendant on March 13, and on the 17th of March it appears Henry Wyatt, president of the Holliday Motor Car Company, accompanied by J. L. Frederick, vice-president, and a Mr. Murphy, manager, went to the office of the Studebaker Corporation in Kansas City, where they talked with the manager and the attorney for said corporation about buying some more cars. Mr. Wyatt testified concerning this visit:

" 'They asked what we wanted to do about the check, wouldn't sell us any cars until we settled the check. I told them we were ready to settle all of it. . . . I took from my pocket . . . United States gold certificates and laid them on the table and said to Mr. Spencer and Mr. Rogers, "I want to tender you this money for six cars," naming the cars. . . . "I tender this money in payment of them, the amount due you under the check, $2368 check, and you deliver to me these cars," figured the discount we were entitled to and $6800 would more than pay for the six automobiles I was tendering the money for, and the $2369 check. When I put the money on the table, made the tender, Mr. Rogers (the attorney) grabbed Spencer (the manager) by the arm and said, "Get out of here," and they went out. We sat in the room in the private office fifteen minutes, nobody came in and we got up and walked out and left.'

"It appears that the cash tender above referred to was $5800 and not $6800, as mentioned by Mr. Wyatt. . . .

"Plaintiff's second contention is that the court erred in allowing defendant to recover for alleged loss of profits under a written contract, in violation of the terms of said contract, and cities section 21 of the contract which reads:

" '*Delays and damages.* Company will use its best endeavors to deliver Studebaker automobiles to dealer in accordance with his orders, but if for any cause company shall fail to make such deliveries, or shall fail to make them within the time stated in the order, company shall not be liable for any damages by reason of such failure to deliver or delays in making deliveries, nor for any loss of profits. Company shall not be liable for any damages or loss arising from the sale or use of automobiles sold under this agreement.'

"The contract was pleaded in the counterclaim. Learned counsel for plaintiff construe this section to mean, in effect, that defendant cannot recover damages, if plaintiff, without cause, fails to make deliveries under the contract. The language of the section last quoted refutes this contention in this: It states that if for 'any cause' the company shall fail to make such deliveries, etc., the company shall not be liable for any damages. The words 'any cause' presupposes some cause and cannot be construed as meaning *no cause*.

"Further discussion of this point is unnecessary. It is obvious that plaintiff's position is untenable.

"In view of these principles, the further contention that the verdict should have been for plaintiff since the conversion of the automobiles by defendant was not denied, cannot be sustained. The case was tried on the theory that defendant had not converted the automobiles, as pleaded under the general denial, and proved to the satisfaction of the jury who were the sole judges of the evidence. . . .

"The contract further provides that ten days' written notice of cancellation of the contract, by either party, was a condition precedent. The record shows that notice was written by plaintiff on March 9, mailed to the defendant and received by it on March 13, which would render the cancellation effective on March 23, 1916; and it follows that any acts done prior to March 23, were done within the life of the contract.

"Further, as above stated, paragraph 21 of the contract provides that if the contract shall be cancelled for any cause, plaintiff shall not be held liable in damages 'by reason of such failure to deliver, or delays in making deliveries, nor for any loss of profits.' As above held 'any cause' cannot be construed to mean *no* cause. Instruction 1, complained of, evidently referred to this clause in the contract and was proper."

Sections 3 and 25 of this contract, pleaded and offered in evidence, read:

"3. *Terms on Automobiles.* For all automobiles purchased as above, dealer shall pay company its regular list prices current at the date of the order, less dealer's discount applying thereto at the time, cash upon delivery of said automobiles, including freight from Detroit, Michigan. In cases of shipments by carriers, company shall, at its option, make sight draft on dealer with bill of lading attached thereto, and dealer shall pay such drafts, with exchange, upon presentation, and upon failure so to do, shall pay interest at the rate of six per cent per annum from date of presentation until paid, or failing therein, company may at its option recall the drafts and ship the automobiles' elsewhere, and charge dealer said interest to date of such recall and also such part of the carrying charges and expenses incurred by such transfer as it considers equitable.

"25. *Term and cancellation Provisions.* This agreement, when executed, shall supersede and annul all former agreements and orders between the parties hereto, relative to the sale of Studebaker Automobiles, and

the same shall become effective upon the 1st day of July, 1915, and continue and remain in force until cancelled, it being mutually agreed that either party may cancel without cause úpon ten days' notice mailed to the other party, provided, however, that for any violation hereof by either party, the other party may terminate this agreement immediately on like notice. The termination or cancellation of this agreement, as herein provided, shall immediately cancel all unfilled orders whether or not time for shipment is past due for automobiles or parts thereof which may have been received by company from dealer, but nothing herein contained shall release dealer from the payment of any sums which he may then owe company for automobiles or parts delivered prior to such termination or cancellation. After the termination of this agreement, the sale of goods or the referring of inquiries by company to dealer shall not be construed as a renewal hereof, but any orders thereafter accepted by company shall be governed by the terms and conditions of this agreement.''

An additional provision of the contract was that the title to and right of possession of automobiles sold to the Motor Car Company should be and remain vested in the relator until fully paid for in money.

It is true that the opinion does not recite these additional provisions of the contract, but for the purpose of this review the reference to the contract ''makes it as much a part of the opinion as if fully written out therein.'' [State ex rel. v. Ellison, 281 Mo. 667, 220 S. W. 498; State ex rel. v. Reynolds, 235 S. W. 88, 90 (2) and cases cited.]

It appears from the learned opinion that on February 29, 1916, the Holliday Motor Car Company purchased three motor cars of the relator for $2369.31, which cars were delivered and the Motor Car Company gave its check to the relator therefor; that payment of this check was stopped and thereupon relator demanded the return of the cars, which demand was refused.

Thereafter, on March 9, the relator mailed a notice to the Motor Car Company cancelling the contract, which was received on March 13. On March 17, the president of the Motor Car Company went to relator's office in Kansas City, tendered $5800 in payment of the check and the price of six additional automobiles, less seven per cent discount, and demanded the delivery of the six additional cars. The counterclaim for damages was based in part on the failure to deliver these additional cars.

The learned opinion, in construing the contract between the relator and the Motor Car Company, held that the language of section 21 refutes the contention of the relator that the Motor Car Company was not entitled to damages for the refusal to deliver the six automobiles it claims to have ordered on March 17. Recurring to the opinion, it is said:

"The language of the section last quoted refutes this contention in this: It states that if for *any cause* the company shall fail to make such deliveries, etc., the company shall not be liable for any damages. The words 'any cause' presupposes some cause and cannot be construed as meaning *no cause.*"

The court's construction of the contract was that ten days' notice of cancellation by either party was a condition precedent, and that the order for the six additional automobiles on March 17th was made within the life of the contract.

We are of the opinion that this construction of the contract is a perversion of its plain provisions and directly contrary to the intent and purpose of the parties thereto, as manifested by its clear and unmistakable terms, and that in so construing it the learned Court of Appeals failed to follow the decisions of this court announcing the rules for the construction of contracts.

The refusal of the Motor Car Company to pay its check for the purchase price of the three cars sold and delivered to it on February 29, 1916, was a palpable violation of the terms of the contract and authorized the im-

mediate cancellation thereof.  By the express terms of the contract, the cancellation became effective immediatly, cancelled all unfilled orders for automobiles and released the relator from claims for damages by reason of such failure to deliver or delays in making deliveries, and for any loss of profits.  [Studebaker Corporation v. Wilson, 247 Fed. 403.]

In Arensmeyer v. Insurance Co., 254 Mo. 363, 380, we said: ''The contract was one the parties had a legal right to make and did make, and the courts cannot substitute another for it.  [Stagg v. Ins. Co., 10 Wall. l. c. 592, 593.]''

In Liggett v. Bank, 233 Mo. 590, 601, we said: ''In construing the letter, a court is not at liberty, in order to fasten liability, to add or take away words, thereby altering the sense and either enlarging or cramping the assurance given in the instrument.  [Weil v. Schwartz, 21 Mo. App. l. c. 380-381.]''

In Moran Bolt & Nut Manufacturing Company v. Caldwell, 240 Mo. 358, 365, we said: ''The problem in this case is not to declare the delicate graduation of meaning which the term 'require' takes when expanded as a synonym, but to ascertain its natural import and accepted meaning in the particular sentence of the contract under review.  To do this, the law does not investigate the meaning of words in, the abstract, but deals only with the concrete meaning in concrete contracts of the words used.  All other inquiries are linguistic, not legal quests. To serve its own purpose, the law puts itself in the shoes of the contracting parties and ascertains the natural and accepted sense of the words used in their agreement, viewed in the light of the objects had in view and the circumstances surrounding the actors.  This rule has been aptly stated by Lamm, J., in Donovan v. Boeck, 217 Mo. l. c. 87, to-wit: 'But one main rule is common to the construction of all contracts and to it all others must give way.  That rule is to get at the meaning of the contract and enforce its true intendment as judicially

gathered from all its four corners. To this end it is elementary that the subject-matter of the contract, the relations of the parties to that subject-matter and the ordinary meaning of the language used in the contract, pass in review.' "

If, however, the cancellation was not effective until ten days after March 13, as held by the Court of Appeals, the result would be the same. The notice cancelled all unfilled orders and released relator from liability for damages for failure to make deliveries and for loss of profits.

There are other questions presented worthy of consideration, but as our ruling will require the Court of Appeals to reverse its judgment and remand the cause for a new trial, these questions may not arise on a retrial. "In this kind of a proceeding we are not instructing trial courts. We are simply determining conflict of opinions. If we find there is a conflict upon a question which would of necessity reverse the action of the Court of Appeals, as here, then we need seek no further reason for quashing its record and judgment." [State ex rel. v. Ellison, 281 Mo. 667, 682.]

The record of the Court of Appeals is quashed. All concur.