THE STATE ex rel. GEORGE A. WAHL v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

In Banc, December 22, 1917.

1. CERTIORARI: Conflict in Decisions: Errors Considered. In a *certiorari* to have a decision of a court of appeals declared void for that it conflicts with the last previous ruling of the Supreme Court, the scope of review does not extend to any errors of opinion on the part of said court of appeals which do not conflict with the latest previous rulings of the Supreme Court. The Supreme Court, in such case, is not called upon to determine whether the views as expressed by the court of appeals are correct or incorrect, but is only to decide whether they conflict with a controlling decision of its own.

2. ———: ———: Confined to Majority Opinion. The review by the Supreme Court upon *certicrari* of a decision of a court of appeals alleged to be in conflict with the last previous rulings of the Supreme Court, does not embrace any consideration of the record of the case in the court of appeals further than the same is set forth in its majority .opinion under review.

3. ———: ———: Fraud and Deceit: Evidence of Mental Incapacity: Not Pleaded. A ruling by the Court of Appeals that evidence that the plaintiff, in a legal action for fraud and deceit, was a man of weak mentality, inexperienced, over-credulous and unqualified in business dealings, although not pleaded, was· admis-

sible under general allegations that defendant knowingly made false and fraudulent representations, with the intent and purpose of deceiving plaintiff and that relying thereon he was deceived and led to enter into the contract, to his damage, is not in conflict with any prior decision of the Supreme Court, for said court has never made any ruling on the point, and, therefore, whether said ruling be right or wrong, the Supreme Court has no jurisdiction, by its writ of *certiorari*, to quash said decision.

*Held*, by GRAVES, C. J., dissenting, with whom BLAIR and WOOD-SON, JJ., concur, that the evidence which tended to show that plaintiff was weak-minded not only broadened the issues made by the pleadings but contradicted the terms of plaintiff's petition, since allegation that he contracted with defendant relying upon his false statements carried with them the presumption that plaintiff was mentally normal, and such presumption, or legal inference from the facts pleaded, is just as much a part of the petition as if written therein in express words; and to permit him to prove a weak mentality, not only broadens the pleadings, which is a course condemned by many cases of the Supreme Court, but is a contravention of the solemn admissions of his own pleading, and therefore the ruling of the Court of Appeals should be quashed.

*Held*, also, that the Supreme Court on *certiorari* is not confined to the suggested conflicts in decisions stated in the briefs, but knowing of other conflicts should act in the interest of harmony of opinions.

## *Certiorari.*

WRIT QUASHED.

*John Cashman* for relator.

The majority opinion and judgment of the St. Louis Court of Appeals in the case of Flack v. Wahl, in deciding that evidence of the lunacy or mental incapacity of Flack may be given in evidence to the jury without being pleaded, or made an issue by the pleadings, failed and refused to follow the last controlling decisions of the Supreme Court on that question and that decision and judgment should, therefore, be set aside and annulled by this court. The decisions so disregarded by the Court of Appeals are: Caldwell v. Reed, 198 Mo. 379; Wells v. Mutual Benefit Assn., 126 Mo. 637;

Rhoades v. Fuller, 139 Mo. 187; Jamison v. Culligan, 151 Mo. 416; Blunt v. Spratt, 113 Mo. 48; McKenzie v. Donnell, 151 Mo. 454, 455; McFarland v. Mo. Pac. Ry. Co., 125 Mo. 276; Harris v. Craven, 188 Mo. 609; Och v. Railroad, 130 Mo. 74; Chitty v. Railroad, 148 Mo. 64; Cobb v. Lindell Ry., 149 Mo. 144; Mark v. Cooperage Co., 204 Mo. 261. Other cases and text-writers sustaining the doctrine are: Banking Co. v. Loomis, 140 Mo. App. 62; 2 Chitty on Pleading, 436; Harrison v. Richardson, 1 Mood. & Rob. 504; Jackson v. Van Densen, 5 Johns. 144; Alcock v. Alcock, 3 M. & G. 147, 268; Kendall v. May, 10 Allen, 59; Jackson v. Caldwell, 4 Cowen, 207; Edwards, Bills & Notes (3 Ed.), sec. 26; Byles on Bills and Notes (8 Ed.), sec. 64; Randolph on Commercial Paper, sec. 251. The majority opinion says, in discussing the admissibility of this evidence: "Were the action one to rescind the contract on the ground that Flack was mentally incapable of contracting, the question would be quite a different one." Meaning, of course, that then the mental incapacity would have to be pleaded before proof thereof may be offered. This part of the opinion is further in conflict with the last controlling decisions of the Supreme Court on that point. Much stricter requirements apply in actions for damages on ground of fraud than on actions to rescind. McFarland v. Railroad, 125 Mo. 276; Harrison v. Craven, 188 Mo. 608. To like effect are the following text-writers: 20 Cyc. 11; Greenleaf on Evidence (16 Ed.), p. 37, sec. 14; 2 Wigmore on Evidence, p. 25, sec. 1904.

*R. P. Williams* and *C. B. Williams* for respondents.

(1) All facts from which the ultimate and conclusive facts may be inferred are evidential and need not be stated; but those facts from which the legal conclusion is to be drawn, upon which the right of action depends, must be stated. Mental weakness is simply an evidential fact, from which the ultimate fact—namely, reliance—may be inferred. Fogle v. Pindell, 248 Mo. 72; Bragg v. Met. St. Ry., 192 Mo. 350; Bailey v. Kan-

sas City, 189 Mo. 514; Planet v. St. Louis, 115 Mo. 619; Alcorn v. C. & A., 108 Mo. 91; Robertson v. Wabash, 84 Mo. 121; Murphy v. Price, 48 Mo. 250; Sawyer v. Walker, 204 Mo. 157; Moormeister v. Hannibal, 163 S. W. (Mo. App.) 928; See v. Cox, 16 Mo. 168; Mitchell v. Clinton, 99 Mo. 153; Edgell v. Sigerson, 20 Mo. 494 and 497; Kinsolving v. Kinsolving, 194 S. W. (Mo. App.) 530; Patterson on Missouri Code Pleading (2 Ed.), secs. 66, 127, 146. (2) In a certiorari proceeding it is not a question as to whether or not the opinion of the Court of Appeals is sustained by authority, but the sole question is whether it contravenes one of the Supreme Court rulings upon a similar state of facts. State ex rel. v. Robertson, 197 S. W. (Mo.) 79; State ex rel. v. Ellison, 269 Mo. 151. (3) A party cannot be surprised that his adversary introduced testimony in support of the issues made by the pleadings, even though such testimony is false. McWhirt v. Railroad, 187 S. W. (Mo.) 830; Byrd v. Vanderburg, 168 Mo. App. 120; Bragg v. Moberly, 17 Mo. App. 22; Haynes, New Trial, par. 79; Shore v. Powell, 76 S. E. (W. Va.) 126.

BOND, J.—I. This is an application by certiorari to declare the majority opinion of the St. Louis Court of Appeals to be void for want of jurisdiction, in that the legal doctrine announced in that decision was in conflict with the last previous rulings of this court in the cases cited by relator.

The point, as to which the petitioner alleges errancy in the opinion of the Court of Appeals, depriving it of jurisdiction, is so much of its opinion as affirms the admissibility of evidence tending to show the plaintiff in a legal action for fraud and deceit was a man of weak mentality, inexperienced, over-credulous and unqualified in business dealings, and therefore more likely to rely upon the false representations of defendant than if he had been a man of average capacity. It is urged on the part of the relator that such evidence was inadmissible in view of the fact that the petition filed by plaintiff stated the facts necessary to the sustention of

an action for damages for fraud and deceit, without any averment of any insufficiency on the part of plaintiff in the respects shown by the testimony.

In dealing with the point thus presented to it, the majority opinion of the Court of Appeals (after reciting the substance of the testimony tending to show that plaintiff was weak-minded and easily influenced) disposed of the question as follows (Flack v. Wahl, 193 S. W. 56, 1. c. 60):

"The only question before us in this connection is whether testimony of this character is admissible at all in the absence of an allegation in the petition to the effect that plaintiff Charles D. Flack was weak-minded or mentally incapable of protecting himself in a business transaction. . . .

"From the record before us it appears that the trial court ruled as it did upon the theory that this testimony was admissible under the allegation of the petition that plaintiffs relied upon the alleged false representations of defendant, believing them to be true, and were thereby induced to enter into the contract in question and consummate the same. A consideration of this assignment of error has led us to the conclusion that this view is sound. It was, of course, unnecessary for plaintiffs to plead anything respecting the mental capacity of plaintiff Charles D. Flack as an essential element of their action for fraud. The petition alleges all of the substantive facts constituting the cause of action sued upon. Among these is the necessary averment that plaintiffs relied upon the representations alleged to have been made to them. It was essential that plaintiffs sustain this averment by proof, and it would seem that it was proper to receive for this purpose any evidence having any probative force and effect—and not otherwise inadmissible—which tended to support such averments. An allegation that Flack was weak-minded would seem to have no proper place in this petition. The Code requires a plain and concise statement of the facts constituting the cause of action (Sec. 1794, R. S. 1909), and provides that only the substantive facts nec-

essary to constitute the cause of action shall be stated (Sec. 1813, R. S. 1909), and provides further that a party shall not be required to state evidence in his pleading or to disclose therein the means by which he intends to prove his case (Sec. 1818, R. S. 1909). Here the substantive facts to be alleged are that defendant made certain specified false representations of material facts in connection with an exchange of properties; that defendant knew such representations to be false or made them of his own knowledge when he had no knowledge as to their truth or falsity; that they were made with the intent and purpose that they be acted upon by plaintiffs, and that plaintiffs did rely and act thereupon, to their damage. All of these substantive facts were properly alleged. It would have been unnecessary and improper to plead the evidence by which plaintiffs expected to prove such substantive facts. The fact that Charles D. Flack was weak-minded, if true, was not one of the substantive facts constituting the cause of action, and hence was not alleged. Were the action one to rescind the contract on the ground that Flack was mentally incapable of contracting, the question would be quite a different one. But in the instant case it seems quite clear that the question is not whether plaintiffs should have pleaded this matter, but whether evidence of this character is admissible at all in an action of this precise character. It was not admissible for any purpose except to prove that the representations were relied upon. In such cases reliance is a question of fact, to be established not alone by a party's own assertion, but to be gathered from probative facts and circumstances which cast light upon the matter. And if the party alleging fraud be ignorant, inexperienced or of weak intellect, and hence guileless and readily susceptible to the artful designs of a fraud-feasor, and easily imposed upon, proof thereof ought to be held admissible in support of the allegations of reliance. Particularly is this true here, we think, since defendant strongly contended and sought to make it appear that plaintiffs had

272 Mo.—38

full opportunity to investigate, and did investigate, and are not in a position to assert that they relied and acted upon the representations alleged.

"In a leading encyclopedic compendium of our law, the rule concerning this matter is thus stated:

" 'Evidence is admissible of any facts tending to show reasons for reliance upon defendant's representations—as that the discovery of the true condition of things was difficult, that the relations of the parties were of a confidential nature, that plaintiff was ignorant of the matters to which the representations related while defendant was familiar with them, or *that plaintiff was of weak intellect and easily imposed upon.'* [See 20 Cyc. 117.]    (Italics ours.)

"In Bloomer v. Gray, 10 Ind. App. 326, cited in support of the italized portion of the text above quoted, the action was one for fraud and deceit. A witness was permitted to state that the plaintiff was weak-minded at the time of the transaction in question. As to the propriety of admitting his testimony, the appellate court said:

" 'We fully concur in the statement of counsel for appellant, that the *gravamen* of the action is not to recover on account of the weak-mindedness of the appellee, but we cannot for that reason say that this evidence was not competent; on the contrary, we think it was proper for the purpose of showing his susceptibility to the representations of the decedent. The representations made, if false, would have created a liability against the decedent, whether the appellee was weak-minded or not, and to show that he was weak-minded did not increase the liability or entitle him to a recovery which otherwise he did not have. The fraud consisted in misleading the appellee and then taking advantage of him after he had been thus deceived. Any fact which tends to throw light on the manner in which the artifice was perpetrated is proper. True, the wrong done was no greater on account of appellee's weak mental condition, yet he was probably more susceptible to the wiles and cunning of the artful than if his mental faculties

were strong and unimpaired. The jury were to determine the question of fraud from all the facts and circumstances, hence were entitled to know not only what the representations were which the decedent made, but what the probable effect of the same was upon the mind of the appellee, and what influence, if any, they had upon his making the trade.'

"It is true that in that case the petition alleged that certain false representations were made to plaintiff, 'who was weak-minded.' But these words, thus thrown into a petition charging actual fraud, did not, in our opinion, affect the question of the admissibility of the testimony mentioned. And it appears from the quotation above that the court so considered the matter, and placed its ruling upon the ground that the testimony was admissible under the allegation of reliance.

"In Cummings v. Thompson, 18 Minn. 246, a similar question was considered. The action was upon a promissory note and the defense was one of fraud in obtaining the note, without consideration, perpetrated by the payee, through a false reading thereof to defendant. It was not alleged that the defendant was unable to read. A portion of the opinion is as follows:

"'We are also of opinion that under the allegation that the defendant relied upon and believed the false reading and misrepresentations of the contract by Ensign, and was misled thereby, it was competent for the defendant to prove the facts offered to be proved relating to his inability to read. The averment that the defendant relied on, and believed, the reading of the contract, and the representations of its contents by Ensign, is an allegation of fact and essential to constitute a fraud. . . . And it would seem to be apparent, that the evidence offered of the inability of the defendant to read, in connection with the facts that he executed the contract without reading it, or further inquiry, would tend directly to show that in thus executing the instrument he did, in fact, rely upon and was misled by Ensign's reading and misrepresentations of it. The defendant's inability to read is, therefore, merely a

specific fact which goes to support the general allegations in the pleadings and need not be specially stated.'

"These authorities we regard as here in point, and strongly persuasive in support of respondent's position. We are referred to no case in this State directly in point. A multitude of our cases might be cited in support of the general principles which we have attempted to state and apply above, but it is unnecessary to encumber the opinion with such citations."

In the rulings of this court permitting the use of a writ of *certiorari* in cases like the present (in which I am unable to concur) it is distinctly announced, as I understand, that the scope of review does not extend to any errors of opinion on the part of the Court of Appeals, which *do not conflict* with the latest previous rulings of this court on the subject, nor does it embrace any consideration of the record of the case in the Court of Appeals further than the same is set forth in the opinion under review. It follows that we are not called on to determine whether the above quoted views of the Court of Appeals are correct or incorrect, but simply whether they *conflict* with a controlling decision of this court.

II. Unless there is a subsisting decision of this court declaring the law to be that evidence tending to prove weak-mindedness and incompetence on the part of the plaintiff in a legal action for fraud and deceit, is not admissible under a petition which alleges fully all the constitutive facts and legal elements warranting a recovery in such an action without a special allegation that the plaintiff was also a weak-minded man and incompetent in business affairs, there is and was no conflict in the opinion of the Court of Appeals with the last previous ruling of this court. None of the cases cited by the applicant for the writ, either expressly or by necessary implication, decided any proposition of law *contrary* to the views expressed in the opinion of the Court of Appeals.

Chadwell v. Reed, 198 Mo. l. c. 379, was a suit to annul a deed to land on the ground of the alleged mental unsoundness of the grantor. After a thorough review of the testimony the court held that the advisory verdict of the jury on certain interrogatories submitted to them by the chancellor, which the trial court seems to have adopted, was unsupported by any evidence and the decree was reversed. This was a purely equitable action for the rescission or annulment of a contract and contains no hint or suggestion of a ruling contrary to that applied by the Court of Appeals in the distinctively legal action of fraud and deceit. The plaintiff in this case exercised the option, which the law gave him, of bringing a common law action for damages for fraud and deceit, instead of asking for a rescission of the contract and a restoration of the *status quo* by a court of equity, which he might have done by acting seasonaby after discovery of the fraud. He chose rather to avail himself of a purely legal redress based upon an adherence to the contract and a right to recover for damages caused to him by the consummation of the contract. [Brown v. Lead & Zinc Mining Co., 231 Mo. l. c. 175, 176; Cottrill v. Krum, 100 Mo. 397.]

Harrison v. Craven, 188 Mo. 590, was a suit in equity to compel a conveyance of property and an accounting for rents and profits, coupled with a count for damages for fraud and deceit and delay and prevention in the construction of a building. It made no announcement whatever of any rule of law applicable to the kind or extent of evidence admissible in a legal action of fraud and deceit under a petition containing sufficient allegations to warrant a recovery in such an action.

Cobb v. Lindell Ry. Co., 149 Mo. 135, does not touch the matter in hand from any point of view. It deals only in general terms with the rule of pleading as applied to a case where suit was brought for personal injuries against a street car company.

Chitty v. Railroad, 148 Mo. 64, is equally off the point, relating simply to the truism that a plaintiff cannot plead one cause of action and recover upon another not pleaded.

Neither does the decision in McKenzie v. Donnell, 151 Mo. l. c. 454, touch the present inquiry. It merely recites that a contract made by an insane person in ward is void and one made by such a person not in ward is only voidable.

So, also, is Jamison v. Culligan, 151 Mo. l. c. 416, to a similar effect with a similar citation of authorities in support; but making no announcement in the slightest degree opposed to anything ruled by the Court of Appeals.

The case of Rhoades v. Fuller, 139 Mo. 179, was a suit in equity to set aside a contract of an insane person not under guardianship. Nothing said or ruled in the case in any way supports the theory that the Court of Appeals conflicted with any ruling of this court in its opinion in this case.

The case of Och v. Railroad, 130 Mo. l. c. 74, contains a discussion as to the probative force of evidence tending to show incapacity to make a contract and a ruling of the *then* state of the law, that the issue of mental incapacity to make a release should not have been submitted to the jury.

The case of Blount v. Spratt, 113 Mo. 48, simply related to the circumstances under which a conveyance would be set aside in equity on the ground of the insanity of the grantor, if that was not made known to the grantee at the time of the contract.

Wells v. Mut. Benefit Assn., 126 Mo. l. c. 637, refers only to the voidability of a contract of an insane person not under guardianship.

McFarland v. Railroad, 125 Mo. 253, is a suit for personal injuries. The local citation on page 276 discusses the distinction between legal and equitable rights and remedies though administered in the same court, and can have no bearing on the present proceeding.

Mark v. Cooperage Co., 204 Mo. l. c. 261, simply interprets statutes requiring pleadings to be in writing.

Newham v. Kenton, 79 Mo. l. c. 386, is to the effect that new matter could not be introduced under a general denial.

It is perfectly plain that none of these citations contain any rulings opposed to the views of the St. Louis Court of Appeals as to the scope of the evidence permissible in an action for fraud and deceit under a petition containing all the allegations necessary to a recovery. It is impossible, therefore, to declare the opinion of that court to be in conflict with the last previous ruling of this court on the point suggested by relator. The learned writer of the dissenting opinion evidently did not deem the opinion of his associates contrary to any decision of this court or any of the courts of appeals or he would have exercised his constitutional prerogative to cause a certification of the case to this court for determination and harmonization of the law.

It follows that our writ was improvidently granted and should be quashed. It is so ordered.

*Walker, Faris* and *Williams, JJ.*, concur; *Graves, C. J.*, dissents in separate opinion, in which *Woodson* and *Blair, JJ.*, join.

GRAVES, C. J. (dissenting)—I do not agree with our learned brother, when he concludes that there is no conflict between the opinion of the Court of Appeals and this court. The evidence which tended to show that plaintiff was feeble-minded, not only broadened the issues made by the pleadings, but contradicted the terms of plaintiff's very petition. When plaintiff stated in his petition (without alleging the condition of his mind) that he contracted with defendant, relying upon statements of defendant, which statements were false, and that he was injured thereby, such statements in the petition carried with them all the legal presumptions and inferences growing out of the facts stated. The presumption, under the facts pleaded, is that plaintiff was mentally normal—not weak-minded, feeble-minded, idiotic or insane. This legal presumption, or legal inference from the facts pleaded, is just as much a part of the petition, as if written therein in express words. To permit plaintiff to prove a weak mentality is (1) broadening the issues made by the pleadings, which contravenes a school of cases from this court, and (2)

contradicting the solemn admissions of his own pleadings. When by *certiorari* we order up the record of a Court of Appeals in order to have their opinion conform to the opinions of this court, we are not confined to the suggested conflicts stated in the briefs. If this court knows of conflict not cited by counsel, we should act in the interest of harmony of opinions. I therefore dissent. *Blair* and *Woodson, JJ.*, concur in these views.