THE STATE EX REL. UNION BISCUIT COMPANY v. WILLIAM DEE BECKER ET AL., Judges of St. Louis Court of Appeals.—293 S. W. 783.

Court en Banc, March 2, 1927.

**1. CERTIORARI: To Court of Appeals: Matters Considered: Petition.** In a **certiorari** directed to a court of appeals, based on the ground of a conflict between its decision and a prior controlling decision of this court, a mere allusion to a written document does not incorporate it in the opinion of

316 Mo.—55.

said court, but if a pleading, instruction or other written document referred to in its opinion was the subject-matter of a ruling therein it is thereby by reference made a part of the record for review in this court. Where the opinion of the Court of Appeals says that "there were three assignments of negligence in the petition" and shows on its face that the petition was the subject-matter of a ruling, the petition on **certiorari** is thus made a part of the opinion and a part of the record for review by this court.

**Held,** by WHITE, J., dissenting, with whom BLAIR, C. J., and WALKER, J., concur, that the review should be limited to conflicts in rulings upon propositions of law as those propositions or rulings appear in the opinion of the Court of Appeals when compared with prior decisions of this court, and this court has authority, under Section 6 of the Amendment of 1884, to consider only such statements of facts as are set forth in the opinion; that there is no middle ground between a consideration of the entire record and a consideration of only the opinion; that alleged conflict in the opinion might disappear if all the evidence before the Court of Appeals were considered upon the review, and this court has no more authority to consider the pleadings, instructions and written documents, as incorporated by reference in the opinion, than it does the oral evidence referred to or summarized in the opinion; that the conflict sought to be cured upon **certiorari** is conflict in the statements of the law, and only a consideration of the opinion itself, taking the facts stated in it to be true, is necessary to determine whether there is such conflict.

2. ———: ———: Negligence: Petition: Only One Ground Stated as Cause of Injury: General Demurrer. Where the petition states three acts of negligence, but contains no allegation that two of them caused or contributed to plaintiff's injury, plaintiff is not entitled to go to the jury on either of the two as stating a separate and distinct ground of negligence, and a general demurrer to the evidence offered at the close of the whole case is sufficiently specific to require a ruling on the point whether the evidence is sufficient to sustain a verdict on the only ground which the petition charges caused the injury. And where the Court of Appeals in its opinion stated that "there were three assignments of negligence in the petition," this court upon **certiorari** will consider the petition, and ascertain from it that it alleged that only one act of negligence caused the injury. And such being the state of the record, the opinion of the Court of Appeals ruling that defendant, after its general demurrer was overruled, by failing to ask for a specific withdrawal instruction as to any assignment of negligence in the petition and by asking and receiving instructions, was in no position to complain of the court's refusal to give its general demurrer, contravened the rulings of this court in Torrance v. Pryor, 210 S. W. 430.

Corpus Juris-Cyc. References: **Certiorari**, 11 C. J., Section 78, p. 128, n. 3; Section 215, p. 165, n. 25; Section 355, p. 200, n. 31. **Courts**, 15 C. J., Section 511, p. 1079, n. 42. **Negligence**, 29 Cyc., p. 573, n. 34. **Trial**, 38 Cyc., p. 1546, n. 90 New; p. 1550, n. 48.

*Certiorari*.

RECORD OF COURT OF APPEALS QUASHED.

*Grover, Tipton & Graves* and *Wilfley, Williams, McIntyre & Nelson* for relator.

(1) The decision of the Court of Appeals in failing and refusing to consider and pass upon relator's demurrer to plaintiff's evidence

and the failure to give the peremptory instructions requested by relator, is in conflict with the last controlling decision of this court, namely, Torrance v. Pryor, 210 S. W. 430. (2) After defendant's demurrer to the evidence is overruled it is not estopped to complain of the error in the court in so ruling by requesting instructions presenting its theory of defense, and the opinion of the Court of Appeals is in conflict with the following cases: Cochran v. Peoples Ry. Co., 113 Mo. 366; Kenefick-Hammond Co. v. Norwich Ins. Society, 205 Mo. 307; Everhart v. Bryson, 244 Mo. 516.

*Lich & Miller* for respondent.

(1) The plaintiff's petition submitted the case to the court and jury under three specifications or assignments of negligence: First, that the defendant was careless and negligent in permitting the floor to be in a wet, sloppy, and slippery condition; second, in ordering and directing plaintiff to cross said floor when defendant knew that same was in a wet, sloppy, and slippery condition; and, third, that defendant was negligent in causing and permitting the floor to be scrubbed during regular working hours. The defendant now claims that there was in fact only one assignment of negligence in the case, namely, the first assignment above mentioned; and that the other assignments were only matters of inducement, and that there was no causal connection pleaded between the second and third assignments and the injuries sustained by the plaintiff. (2) No rule of law requires the pleader to state that each and every one of the specifications of negligence directly caused and contributed to the injuries of the plaintiff; and even if such an allegation were in the petition, it would at most be a conclusion of the pleader, and the court would look to the substance of the petition to determine whether or not there was any causal connection between the negligence pleaded and the injuries sustained. In the instant case, the petition pleaded a wet, sloppy, slippery, and dangerous floor, and that as plaintiff was walking over said floor at the direction of defendant's foreman, she was injured; and that said floor was made slippery by reason of the conduct of the defendant in having its employees scrub said floor during regular working hours instead of after working hours. Here are three separate specifications of negligence, to-wit: Negligent direction, negligence in maintaining a safe place to work, and negligence in creating an unsafe place by reason of scrubbing during working hours. Relator's contention that there is only one assignment of negligence pleaded, is not supported by the petition itself. (3) The ruling of the Court of Appeals does not conflict with the opinion in Torrance v. Pryor, 210 S. W. 430. The Torrance case is the one which gave rise to the rule, which has been invoked

on numerous occasions since then, that a general demurrer to the evidence in a case where the plaintiff includes in his petition several assignments of negligence saves no point where the defendant joins issue with the plaintiff, after overruling of the general demurrer, in submitting the several assignments of negligence to the jury on the merits, without requesting specific withdrawal instructions. That case means that if in the instant, the defendant had requested a demurrer on the ground that the plaintiff had failed to make out a case under the first assignment of negligence contained in her petition, then the defendant could have joined issue with the plaintiff in submitting this assignment of negligence to the jury without waiving the benefit of its demurrer, because the demurrer would have been specific and directed at the first assignment of negligence. (4) The Supreme Court has had occasion to consider and reconsider the rule of law as announced in the Pryor case, and the case of Davison v. Hines, 246 S. W. 295 is one where damages were requested by a plaintiff who was run over by a switch engine. The case was submitted to the jury under several assignments of negligence, including violation of two ordinances and common law negligence. A general demurrer was offered to the evidence at the close of the case, and after the overruling of the general demurrer, the defendant sought instructions from the court as to the several theories of negligence submitted by plaintiff's petition. In other words, the defendant joined issue with the plaintiff in submitting the case to the jury on the several specifications of negligence pleaded in the same manner as the defendant in the instant case joined issue in submitting the case to the jury on the three specifications of negligence pleaded in the plaintiff's petition. State ex rel. Railway v. Allen, 272 S. W. 927.

ATWOOD, J.—Relator seeks to quash the record and judgment of the St. Louis Court of Appeals sustaining a judgment for plaintiff in the personal injury case of Maria Spina (Plaintiff), Respondent, v. The Union Biscuit Company, a Corporation (Defendant), Appellant.

Counsel for relator with commendable point and brevity state their position as follows:

"The case ruled on by the Court of Appeals was an action for damages for negligent injury of plaintiff by her employer, the defendant.

"The allegations respecting negligence, as set forth in plaintiff's petition, are set forth in full in relator's petition for this Court's writ of *certiorari*.

"Superficially considered, it might be concluded that plaintiff's petition sets forth three grounds of negligence upon which, if supported by evidence, she might have her case submitted to the jury. Carefully considered, however, there is only one alleged ground of

negligence stated in plaintiff's petition, this for the reason that two other purported grounds of negligence do not allege that they in any way caused or contributed to plaintiff's injury, nor is there any such allegation in any other place in plaintiff's petition. There was, under plaintiff's petition, therefore, only one ground of negligence to go to the jury.

"Defendant, at the close of plaintiff's case and at the close of the whole case, requested peremptory instructions, general in form, in the nature of demurrers to the evidence.

"The Court of Appeals, overlooking the fact that there was only one ground of negligence stated in the petition, erroneously held that since there were three assignments of negligence and the peremptory instructions were general, defendant was in no position to urge in the appellate court that the trial court erred in refusing the peremptory instructions.

"Torrance v. Pryor, decided by this court, 210 S. W. 430, 432, clearly lays down the rule that where the demurrer is directed to the specific point of lack of proof, it may, when overruled in the trial court, be urged in the appellate court, and that the fact that the appellant, after its demurrer is overruled, seeks the best instruction possible on the theory adopted by the court, does not estop itself from urging the error in the overruling of its demurrer.

"Clearly, if there is only one issue stated in the petition, a demurrer general in form is, in fact, specific.

"It is unnecessary to cite any authority for the proposition that assignments of negligence (so-called) which do not allege causal connection with plaintiff's injury do not present issues for the jury.

"The Court of Appeals has reached its erroneous conclusion because it has overlooked the fact that the purported second and third assignments of negligence were not alleged to have any causal connection with plaintiff's injury and, therefore, only one ground of negligence was stated in the petition."

It is frankly conceded that conflict with controlling decisions of this court it not apparent on the face of respondent's opinion filed in the case, but relator claims recourse in the petition itself and on the authority of State ex rel. National Newspaper Association v. Ellison, 176 S. W. l. c. 12, and State ex rel. Kansas City v. Ellison, 281 Mo. l. c. 677, urges that we examine the petition which is referred to in the opinion and is a part of the record brought up by our writ. Before ruling this point in the instant case we deem it not inappropriate to review some of our case law pertinent thereto.

Since our decision *in banc* in State ex rel. Curtis v. Broaddus, 238 Mo. 189, we have adhered to the doctrine that we can, by the common law writ of *certiorari* given us by Section 8 of the Amendment of 1884 to the Constitution, cause to be sent to this court *the record* of

any cause decided by a court of appeals, wherein it appears that such court has failed to follow the last ruling of this court upon any doctrine of law or equity. Such exercise of our broad power of "superintending control" is in the interest of uniformity of judicial decision in this State on all issues of law and equity, and its propriety is no longer seriously questioned. [State ex rel. Evans v. Broaddus, 245 Mo. l. c. 135; Curtis v. Sexton, 252 Mo. l. c. 252; State ex rel. Gilman v. Robertson, 264 Mo. l. c. 672.]

It was early ruled that this writ of *certiorari* was one of discretion and not of right (State ex rel. Evans v. Broaddus, 245 Mo. 123), and in State ex rel. Pedigo v. Robertson, 181 S. W. l. c. 989, 990, a majority of this court agreed that the scope of the commonlaw writ of *certiorari* is thus correctly stated in 5 Ruling Case Law, 264:

"The writ of *certiorari,* as a general rule, brings up for review only the record proper of the tribunal to which it is addressed and not the evidence. But if it becomes necessary for the court of review to be put in possession of the facts upon which the court below acted, and which are not technically of record, it is competent to require the lower court to certify such facts in its return to the writ, and this statement of facts will then be a part of the record."

In the majority opinion, with the concurrence of a majority of the court on this point, Judge Faris said (l. c. 990):

"It is fairly plain, the nature of the writ of *certiorari* considered, that there can be no hard-and-fast rule in all jurisdictions as to what constitutes the record to be sent up by the court or administrative body to which the writ is directed. Even a cursory examination of the authorities discloses this. . . .

"So clearly we have the authority to so regulate the command of this writ that it will bring up from the inferior tribunal only so much of the record as may be necessary for our use in deciding the questions in issue."

This rule as to the scope and efficacy of the commonlaw writ of *certiorari* is consonant with reason and supported by the weight of authority. The opinion properly concludes that we may regulate the command of the writ in accordance with the purposes sought to be accomplished by the use of this extraordinary legal remedy, and that without impairing the remedy. However, without promulgating any court rule or handing down any decision clearly limiting the command of our writ in such cases, we have from time to time with some contrariety of expression said what we would and what we would not examine on the return to our writ.

In State ex rel. United Rys. Co. v. Reynolds, 257 Mo. l. c. 36, Judge Brown, speaking for a majority of this court, said: "We are of opinion that we should not examine the evidence, but rely upon the facts as found and recited by respondents. . . . We will consider

only the pleadings, evidence and facts as recited by the court of. appeals whose judgment is sought to be quashed.'' The latter part of this opinion, however, holds that the very information which occasioned these remarks was not necessary to a decision of the case, thus making these remarks *obiter dicta.*

In State ex rel. C. R. I. & P. Ry. Co. v. Ellison, 263 Mo. 509, Judge' BOND, treating the above expressions as the controlling opinion of the court, applied them to the case in hand, but in this he received the specific concurrence of only two other judges, JAMES T. BLAIR, J., concurring only in the result.

In State ex rel. Gilman v. Robertson, 264 Mo. 661, the arguments for and against our power to issue these writs were respectively presented by Judge GRAVES in the majority opinion, and by Judge BOND in a dissenting opinion. The former is of prime importance in its bearing upon the question of what shall be examined on the return to the writ, because it constitutes a clear expression and holding of this court that the fundamental purpose of the exercise of this phase of our ''superintending control'' is to bring about ''harmony in the law'' to the end that one doctrine of law and equity shall apply in all appellate jurisdictions.

We now come to a case cited by relator herein, State ex rel. National Newspapers' Association v. Ellison, 176 S. W. 11. It was decided by this court, in Banc, April 2, 1915. Opinion by GRAVES, C. J., in which all concur except BROWN, J., and BOND, J., who dissent, the latter on question of our jurisdiction only; BLAIR, J., not sitting. In this opinion it is said (l. c. 12), although the opinion of the court of appeals set forth the substance of the petition, that the petition would be looked at, ''being just as much a part of the record as is the opinion of the court.'' Here we have a definite ruling by this court that at least this much of the record in the court of appeals brought' here by our writ of *certiorari* is the record in this court, and that we may examine the petition for the purpose of determining whether the court of appeals has decided the case according to the controlling decisions of the Supreme Court. If the doctrine applied in State ex rel. C. R. I. & P. Ry. Co. v. Ellison, 263 Mo. 509, supra, contravenes, it was here clearly overruled. As to the facts of the case, however, a different rule is thus announced: ''For the facts of the case we· should go to the opinion of the Kansas City Court of Appeals. ·. . . It should therefore be taken as true that the facts in the case were broad enough to authorize the instruction, because the Court of Appeals so says.''

This latter ruling apparently does not question the competency of the commonlaw writ of *certiorari*, if it becomes necessary for the court of review to be put in possession of the facts upon which the court below acted, to require the lower court to certify such facts

in its return to the writ. It simply states a rule of practice, possibly *ab inconvenienti,* that in this class of cases "for the facts we should go to the opinion" of the court of appeals, and we have ever since adhered to this rule.

The ruling that we will examine matter incorporated by reference in the opinion was followed in State ex rel. Hays v. Ellison, 191 S. W. 49, decided in Court en Banc, opinion by JAMES T. BLAIR, J., in which all concurred except FARIS, J., not sitting, and BOND, J., who concurred only in result. On this point the view of the court is thus expressed on page 53:

"The order of publication is not set out in the opinion. Nevertheless, it is expressly referred to and made the basis of a distinct holding. The effect of this is to incorporate it in the opinion and require that it be treated and examined as a part of it. No one would doubt that any court in citing and applying the decision on this point would be under the necessity of consulting the record and construing the opinion in connection with the order of publication the record shows. If a reference of this sort in an opinion does not, in accordance with the general rule, warrant this court in treating the matter referred to as thereby made a part of the opinion for the purposes of writs like this, then the harmony of decision required to be maintained means only a surface harmony which may disappear as soon as it is determined what the opinion under examination really means. Such a result is unreasonable. The order of publication is to be held incorporated by reference."

It was followed in State ex rel. Quercus Lumber Co. v. Robertson, 197 S. W. 79, decided in Court en Banc, where one opinion referred to another opinion for a statement of the facts as to how the plaintiff was injured.

In State ex rel. Wahl v. Reynolds, 272 Mo. 588, l. c. 596, the majority opinion held that our review would not "embrace any consideration of the record of the case in the Court of Appeals further than the same is set forth in the opinion under review."

In State ex rel. St. Regis Realty & Inv. Co. v. Reynolds, 200 S. W. 1039, Judge WILLIAMS, with Judge FARIS only concurring, uses much the same language, but the point adversely ruled upon was the relators' request that the whole record be examined for facts not stated in the opinion. In a separate concurring opinion (l. c. 1041), Judge GRAVES took pains to state his own construction of Judge BOND's words "set forth," consistent with State ex rel. Natl. Newspapers' Assn. v. Ellison, 176 S. W. 11, supra, thus:

"In my judgment when the opinion of the Court of Appeals refers to a pleading, an instruction, or any other written document, and makes such written document the subject-matter of a ruling, then such pleading, instruction, or other written document is by such ref-

erence just as much a part of the opinion as if fully 'set forth' therein.''

It is apparent that mere allusion to a written document is not sufficient to incorporate it in the opinion. It must further appear from the opinion that the pleading, instruction or other written document referred to was the subject-matter of a ruling therein.

In State ex rel. Kansas City v. Ellison, 281 Mo. 667, the opinion referred to the pleadings and instructions, and we examined them in our review of the case. The majority opinion written by GRAVES, J., in which BLAIR, GOODE and WILLIAMSON, JJ., concur, comprehensively reviews the previous cases, including State ex rel. Wahl v. Reynolds, 199 S. W. 978, and again announces the rule above stated in State ex rel. Natl. Newspapers Assn. v. Ellison, 176 S. W. 11. Since this decision we have uniformly adhered to this rule which we have found expressly stated or referred to in State ex rel. City of St. Joseph v. Ellison, 223 S. W. 671; State ex rel. Iron Mt. & So. Ry. Co. v. Reynolds, 286 Mo. l. c. 217 (in which Judge JAMES T. BLAIR discusses the nature of incorporation by reference); State ex rel. Continental Ins. Co. v. Reynolds, 235 S. W. 88; State ex rel. Natl. Council v. Trimble, 292 Mo. 371; State ex rel. Raleigh Inv. Co. v. Allen, 294 Mo. 214; State ex rel. Vogt v. Reynolds, 295 Mo. 375; State ex rel. Studebaker Corporation v. Trimble, 295 Mo. 667; State ex rel. Western Auto Ins. Co. v. Trimble, 297 Mo. 659; State ex rel. Seibel v. Trimble, 299 Mo. 164; State ex rel. Vulgamott v. Trimble, 253 S. W. 1014; and State ex rel. John Hancock Ins. Co. v. Allen, 282 S. W. 46.

In the instant case respondents ruled and their opinion states that "in the petition there were three assignments of negligence." The face of the opinion discloses that the petition was the subject-matter of a ruling, and on the authority of the above cases we should examine the petition, which for the purpose of our review is thus made a part of the opinion and record before us. Counsel for each side have briefed and submitted the case in the light of our unequivocal and repeated ruling, and on the assumption that we would examine the petition. This we shall now proceed to do.

The part of the petition charging negligence is as follows:

"Plaintiff states that it was the duty of the defendant to exercise reasonable care to furnish and provide her with a reasonably safe place in which to work, and to keep said place in a reasonably safe condition, but that defendant was careless and negligent in this respect, in that the floor over which plaintiff was obliged to pass was in a wet, sloppy and slippery condition; that the defendant knew of this condition of said floor, or by the exercise of reasonable care could and should have known thereof; and that this condition of said floor directly caused plaintiff to slip, fall and be injured as aforesaid.

"Plaintiff, for a further assignment of negligence, states that the defendant was careless and negligent in ordering and directing her to cross said floor when said floor was in a wet, sloppy and slippery condition, this being known to the defendant, or by the exercise of ordinary care could have been known to it.

"Plaintiff, for a further assignment of negligence, avers that the defendant was careless and negligent in causing and permitting said floor to be scrubbed during regular working hours, the scrubbing thereof causing said floor to become wet, sloppy and slippery and dangerous to walk over, this being known to the defendant."

There is no allegation in the petition that either the second or the third of the above so-called assignments of negligence caused or contributed to cause the plaintiff's injury, and hence plaintiff was not entitled to go to the jury on either as stating a separate and distinct ground of negligence. The petition in fact presented only one ground of negligence, namely, that covered by the first assignment which is alleged to have "directly caused plaintiff to slip, fall and be injured."

The opinion further reads:

"At the close of the plaintiff's case, and again at the close of the whole case, defendant requested an instruction in the nature of a demurrer to the evidence. These instructions were not specific, but general in their nature. After the court had overruled same defendant did not ask for any specific withdrawal instruction as to any assignment of negligence in the petition, but requested, and the court gave in its behalf, six instructions. . . . It is now in no position to complain of the court's action in refusing to give its peremptory instruction in the nature of a demurrer which it requested at the close of the plaintiff's case and at the close of the whole case."

Having erroneously concluded that three separate and distinct grounds of negligence were pleaded when only one was stated, respondents of course did not consider that when only one ground of negligence is stated in the petition a demurrer though general in form is in fact specific, and failed to follow the controlling decision of this court in Torrance v. Pryor, 210 S. W. 430, and other cases, holding that where the demurrer to the evidence is specific the defendant is not estopped to urge the insufficiency of the evidence in the appellate court by reason of the fact that after the demurrer was overruled defendant asked instructions on the issues. On the record in the Torrance case we ruled for plaintiff because (l. c. 432-3) more than one ground of negligence was submitted, and hence the general demurrer to the evidence was in no sense specific. State ex rel. Miss. River & B. T. Ry. v. Allen, 272 S. W. l. c. 927, was apparently decided on the authority of the Torrance case, but the record on this point was evidently not the same. While the opinion recites (l. c.

926) that "the petition, as is disclosed in the Court of Appeals' opinion, counted on several acts of negligence," etc., it further states that "the plaintiff abandoned her other assignments, and by an instruction submitted the case to the jury, asking a recovery under the humanitarian doctrine."

For the reasons above stated it is ordered that respondents' record and judgment herein be quashed. *Graves, Ragland* and *Gantt, JJ.,* concur; *White, J.,* dissents in a separate opinion, in which *Blair, C. J.,* and *Walker, J.,* concur.

WHITE, J., (dissenting).—The relator concedes that conflict with any controlling opinion of this court does not appear on the face of the respondents' opinion, but in order to discover a conflict the relator has recourse to the petition filed in the trial court.

This brings up the question as to what this court will consider in determining whether an opinion of the court of appeals is in conflict with the ruling of this court. Shall we go beyond the face of the opinion of the court of appeals, and if so, how far, in considering the record before that court?

When the matter of superintending control was first brought to the attention of this court in a claim of conflict between the rulings of a court of appeals and this court, the office of the ancient writ of *certiorari* was considered at length. [State ex rel. Curtis v. Broaddus, 238 Mo. 189.]

Of course under Section 3, Article 6, of the Constitution, and under Section 8, Article 6, of the Amendments of the Constitution, we have superintending control over the courts of appeals. Under the latter section that control is exercised by "mandamus, prohibition and *certiorari.*" The office of *certiorari* is to question the jurisdiction of the court to which it is directed. We may grant the writ where the court of appeals has transcended its jurisdiction in entertaining a case of which the Constitution invests this court with jurisdiction. The case might involve a pecuniary amount, or present issues which the court of appeals had no jurisdiction to consider. In such case no doubt we would necessarily consider the entire record before the court of appeals in determining whether it had jurisdiction. But Section 6 of the Amendment of 1884 to Article 6 defines the jurisdiction of the court of appeals where a *conflict* with this court is claimed. That section provided that "the last previous rulings of the Supreme Court on any question of law or equity shall in all cases be controlling authority in said court of appeals." The court of appeals does not go contrary to the previous rulings of this court unless it states a proposition of law contrary to what this court has held. Neces-

sarily the conflict in such case must appear upon the face of the opinion.

The opinion of Judge Atwood indicates that he is in sympathy with that construction of the Constitution, but is driven to a contrary ruling by repeated holdings of this court.

When this particular question first came up for consideration, State ex rel. v. Reynolds, 257 Mo. l. c. 36, it was said: "Where that class of cases is brought before us by *certiorari* we will consider only the pleadings, evidence and facts as recited by the court of appeals whose judgment is sought to be quashed." In the later case of State ex rel. Bush v. Sturgis, 281 Mo. l. c. 601, we held: "The limit of our review is the opinion of the court of appeals. If it does not disclose a conflict with the former rulings of this court then our power of superintendence is at an end." Other cases have been ruled upon that theory.

Nevertheless a greater number of opinions have held that we may go beyond the face of the opinion of the court of appeals and consider certain parts of the record in that court. Such rulings are not consistent with each other, but the most important are such as appear in the case of State ex rel. v. Ellison, 281 Mo. l. c. 674, where it was said: "Reference in the opinion to a written document in the case, makes it as much a part of the opinion, as if fully written out therein." In that construction a bare majority of the court only concurred. Walker and Williams,. JJ., dissented. Again the theory was expressed in State ex rel. v. Allen, 282 S. W. l. c. 48, where it was said: "For the facts we look to the opinion of the court of appeals and to any pleading, instruction or written instrument referred to therein." Some expressions do not go that far, but taking the last two quotations as definitions of the field to be explored we are left in a state of uncertainty as to just what they mean. What, for instance, is meant by a pleading or instrument referred to? Is it referred to if the character of the instruments is just mentioned in the opinion? If an excerpt from the document is quoted in the opinion does that bring under our consideration the entire document? It is stated in case of National Newspaper Association v. Ellison, 176 S. W. 11, that a mere reference to a document is not sufficient, but it must be made the subject-matter of the ruling to bring it within the consideration of this court. That does not help us any. A candid consideration of the subject will show that if we go beyond the face of the opinion we can not consistently stop short of the entire record before the court of appeals. It was said in the case of State ex rel. v. Ellison, 191 S. W. 49, by Judge James T. Blair, who wrote the opinion, that the purpose of the superintending control in such case was to preserve harmony of decision and not mere harmony of opinion. That a harmony of opinion was only a surface harmony and

we must have harmony of decision. By that he undoubtedly meant that we must see that the case before the court of appeals is decided just as we would have decided it if it were here. We could not have perfect harmony of decision unless we treat the writ of *certiorari* as a writ of error, a writ of review. It is absurd to say that we must have harmony of decision and content ourselves with anything short of complete harmony which can only be secured by a complete review of the entire record before the court of appeals. In the arguments before this court it has been insisted that we have as much reason to inquire into the oral evidence in the case as to inquire into documentary evidence and we have as much reason to inquire into the evidence as we have to inquire into the pleadings. The difficulty in stopping short of the evidence, oral and otherwise, is suggested in the case of State ex rel. v. Reynolds, 286 Mo. 217, in the opinion by Judge J. T. BLAIR, where he said: "The rule in the case cited has never been applied to authorize the consideration in this court, on *certiorari*, or testimony of witnesses upon which a court of appeals founds its statement of facts any further than such testimony appears in the opinion. Whether such testimony would be here for consideration if a reference to it as the basis of a ruling was made, without any statement of the facts it tended to prove, is not presented in this case." If a ruling of the court of appeals is based upon facts, which the record shows as the testimony of the witnesses, which is as easily accessible as a document in the case, then why should we not have recourse to the oral evidence thus embodied in the record in order to determine the propriety of the court of appeals' ruling? What difference is there for this purpose between documentary evidence and oral evidence? Between a deed and an oral contract?

The opinion of the court of appeals might be entirely incorrect when considered with reference to a document in the case. It might be entirely correct on further consideration of the oral evidence in the case. An instruction referred to in the opinion of the court of appeals in its entirety might show the opinion wrong, yet if we would go further and consider all the other instructions and all the evidence we would find the opinion to be correct. An opinion of the court of appeals might be in entire harmony with the rulings of this court on its face where it refers to a written document, instruction or pleading, but an examination of that document, instruction or pleading might show that the opinion is in conflict with what we have decided. But if we should go further and consider all the evidence in the case and all the instructions in the case we might find the opinion of the court of appeals in perfect harmony with our rulings. There is no stopping place if we go beyond the face of the opinion, short of the entire record. If we go to one document to

discover that the court of appeals is wrong, we do that court an injustice if we do not go to the entire record to see whether it is right. An erroneous instruction may be cured by another instruction. The defective pleading may be treated by the parties in the course of the trial as formal and complete in such way as to justify a holding by the trial court that the appellant had no right to complain, yet if we go beyond the face of the opinion and go to the pleadings we might conclude the court of appeals was wrong, whereas in fact it was entirely right.

So there is no middle ground between the consideration of the entire record or the consideration only of the opinion. The conflict which we seek to cure by such a proceeding is conflict in the statement of the law. We want those who read the Reports of this court and the courts of appeals to find that they are in entire harmony. There is no conflict in the rulings unless that conflict appears on the face of the opinion. For these reasons I dissent from the conclusion reached by Judge ATWOOD in the leading opinion. *Blair, C. J.*, and *Walker, J.*, concur in these views.