MAY RELLA JONES, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, APPELLANT.*

Springfield Court of Appeals.   March 3, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2708, p. 764, n. 80; Carriers, 10CJ, section 1377, p. 959, n. 63; section 1423, p. 1018, n. 37; section 1464, p. 1075, n. 26; Trial, 38Cyc, p. 1546, n. 90; p. 1550, n. 48.

*E. T. Miller* and *Ward & Reeves* for appellant.

*Henry C. Walker* and *Smith & Zimmermann* for respondent.

BAILEY, J.—This is an action for damages on account of personal injuries to plaintiff resulting from a fall suffered by plaintiff while a passenger on defendant's train.

The petition states that plaintiff purchased a ticket from defendant at Gideon, Missouri, paying the regular fare for the transportation of herself and two children from Gideon to Kennett, Missouri, and that *en route* she occupied a seat in the rear coach of defendant's passenger train, leaving Gideon about six o'clock P. M. January 3, 1926, and continued to occupy said seat until the train arrived at Kennett. It is further alleged that it was defendant's duty "to keep the aisle of its said coach free from fruit peelings and rubbish and other substances which might cause passengers while walking through said aisle to slip and fall thereon, but that defendant company, wholly disregarding its duty in this behalf, negligently and carelessly permitted the aisle of the coach in which plaintiff was *riding to be littered with fruit peelings and other rubbish* so as to endanger passengers walking through the aisle of said coach and causing plaintiff to be injured in the manner hereinafter set out.

"Plaintiff further states that after said aisle had been cleared of passengers, as aforesaid, she undertook to lead her two small children to the north end of said coach for the purpose of alighting therefrom; that as she was proceeding through said aisle for the purpose aforesaid, and while exercising due care and caution for her safety, one of her feet slipped on a fruit peeling lying in the aisle of said coach, causing her to be thrown suddenly and violently backward against one of the seats of said car and into the aisle thereof, severely injuring her head, back and thigh; that, etc."

The answer contained a general denial and also specifically denied negligence in permitting. the aisle of the coach to become littered with fruit peelings and further denied that fruit peelings negligently permitted to remain in the aisle caused plaintiff to fall; that if there were fruit peelings or rubbish in the aisle defendant and its employees had no knowledge or notice thereof. Then follows a plea of contributory negligence. The reply was a general denial. On trial to a jury a verdict was returned for plaintiff in the sum of $2000 and

judgment entered accordingly, from which judgment defendant has appealed.

The sole assignment of error urged in this court is for failure of the trial court to give defendant's instruction in the nature of a general demurrer to the evidence offered at the close of plaintiff's case and again at the close of the whole case. Before considering this question it becomes necessary to dispose of plaintiff's contention that defendant waived its demurrer to the evidence at the close of the case by requesting and having the court give to the jury defendant's Instructions "C" and "D," submitting to the jury the question of knowledge on the part of defendant's employees of the presence of a banana peeling on the floor of the car. In support of this contention, plaintiff cites, Davidson v. Hines, 246 S. W. (Mo. Sup.) 295 l. c. 303. The Davidson case was an action against a railroad company for personal injuries caused by plaintiff being run down by a train in the nighttime. Negligence was laid on failure of defendant to keep a look-out, failure to maintain a light, failure to sound a warning and also the humanitarian theory of liability was pleaded. At the close of all the evidence a general demurrer thereto was overruled. Thereupon defendant offered and had given certain instructions limiting and controlling the issues submitted to the jury. Under such circumstances our Supreme Court ruled that defendants, by causing the instructions mentioned to be given to the jury "estopped themselves from denying that the evidence was sufficient to go to the jury upon each of the questions so submitted." That case is in line with previous rulings of the Supreme Court on that question. [Torance v. Pryor, 210 S. W. 430.]

It has no application to this case for the reason the petition contains but one assignment of negligence, i. e., that defendant permitted the aisle to be littered with fruit peelings and that one of plaintiff's feet "slipped on a fruit peeling lying in the aisle of said coach."

Where the petition contains but one assignment of negligence a general demurrer to the evidence attaches to that issue and thus becomes just as specific as a special demurrer directed to that issue would be. There is no necessity or possibility of singling out or separating issues in a case where there is but one issue and therefore the reason for the rule announced in the Torance case, supra, vanishes. [State v. Becker, 293 S. W. 783; McMahon v. Iron & Steel Co., 267 S. W. 83.]

Under this record defendant had the same right to offer additional instructions without waiving its demurrer to the evidence as it would have had if a specific demurrer to the evidence as to negligence in permitting the aisle of the coach to become littered with fruit peeling had been offered.

It may also be noted that the Instructions "C" and "D," in the form offered by defendant, were refused, but amended instructions were given by the court containing the same substance as the instructions offered, differing only on the question of degree of care. Defendant asserts that the rule above referred to, cannot be invoked when its instructions are refused. We are inclined to the view that where the instruction given by the court is substantially the same as the one offered, the mere refusal to give the instruction in the identical language contained in the original instruction would not prevent the operation of the rule of waiver heretofore mentioned. However that may be, it is clear that in this case defendant has not waived its demurrer to the evidence.

In considering this demurrer we must give due weight to the established practice which requires the appellate court under such circumstances to accept as true all the evidence favorable to plaintiff and to indulge in every reasonable inference which may be drawn from such evidence in support of plaintiff's case. [Murrell v. Railroad, 213 S. W. 964, 279 Mo. 92.]

The evidence fully establishes the fact that plaintiff was a passenger on defendant's train and that while she was leaving the train, upon its arrival at Kennett, she fell and was severely injured. The events leading up to her fall and the cause of the accident itself may be best understood from plaintiff's own testimony. She testified that she with her two children, got on the train at Gideon about twenty minutes until five o'clock in the afternoon and arrived at Kennett near seven o'clock that evening; that before taking a seat in the car she brushed some "cracker crumbs and pieces of cheese from the seat; that her seat was about three seats back from the middle;" that the train made stops at Clarkton, Campbell, White-Oak and Kennett; that she paid little attention to the other passengers; that there was a lady about three seats up—"and she peeled a banana and divided the banana, and that's all I noticed, among the three children. From the time I got on that train at Gideon until I reached Kennett, I did not see any porter on that train come through and clean up:" that no brakeman or conductor came through and cleaned the aisles; that the trip from Gideon to Kennett required about two and one-half hours. As to the manner in which the accident occurred she testified as follows:

"When the train stopped people got up and began to get off of the train and I waited till the bigger majority of the people, in fact, all had gone ahead of me; there was one lady left in the car, that was reading, that didn't get off, and the rest all got off, and I took the children and started off with them, and between the first and second seat I was standing even, like this, that is, I was making a step and was holding this little boy's hand, this one was holding mine

and as I made the step, as I put my foot down, my right foot went from under me and threw me, and I was trying to keep from falling on the little boy and fell and struck my arm, sliding back to the back and struck my head on the iron down on the side of the coach. I fell between the two two seats, and then everything went dark as I struck, and the next thing I knew there was a gentleman had lifted me up and then I could see a little bit and again things went dark again, and my first thought was the children and I mentioned to get my children, and they started to put me in the seat and it just seemed like I got so sick all over, and they sat me back and then sat me in the seat, and I was just deathly sick and numb all over, and the lady that was on the train Miss Snider came to me, and the lady on the train and somebody put a wet handkerchief on my face, and I was blind at that time, and I came to again, and somebody was giving me a drink of water, and I asked Miss Snider to call the doctor, I mean my husband, and she called the doctor and Dr. Presnell, and then everything kind of left me till I came to myself on the platform and it kind of left me again and I come to myself and I was in the depot and they were all working with me, and then Dr. Jones came and the doctor gave me a hypodermic and they carried me to the car, that is, Dr. Jones had his arm around me and I had my arm around his neck.'' ''With children you have to be careful for them and look out for them, and I was holding on this side, and one was holding my hand and I was holding the other one on this side, and my larger boy was behind me, and of course, I was just walking along in an ordinary way and all at once I was gone. I felt my foot when it began to slip and tried to catch myself, but it was too late, and my oldest son grabbed for me, but I was done gone; I was trying to keep from falling on my child, and of course, that caused me to fall between the seats and the arm of the seat struck me there, then I fell back this way and the back of my head struck the iron on the side of the car. I know the shoes I was wearing that evening. I have them here in the court room; the slipper that you hand me now is the slipper I was wearing on that day; it fits the right foot.''

On cross-examination plaintiff testified that she did not see a banana peeling on the floor of the aisle and did not notice whether or not the lady who divided a banana with her children threw the peeling on the floor. She testified that she did not faint before she fell but lost consciousness from the force of the fall; that she regained consciousness sufficiently to hear people talking about what caused her to fall. It seems she was not unconscious continuously immediately after the fall because she testified she saw a mark, ''about ten inches long on the floor, just like someone had spit on it, just made a streak, just a dark mark; it looked wet, like a wet or damp mark, and I saw it, but I didn't say anything about it to any-

body; they were all there looking for something at the same time, but I wasn't talking about it; I just remembered in a faint that I saw it. I only saw the mark. At the time I saw this mark, I did not see a banana peeling or anything else."

There was evidence that plaintiff's husband, Dr. Jones, found a piece of banana peeling stuck to the heel of one of plaintiff's shoes the next morning after the accident. Plaintiff did not wear the shoe after the evening she was injured. The shoe was kept carefully wrapped in tissue paper upon the discovery of the banana peeling adhering to the heel thereof and it was exhibited to the jury with the dried peeling still stuck to the shoe. There were no witnesses, plaintiff included, who testified to having seen a banana peeling in the aisle of the car either before or after plaintiff's fall. There were some eight or nine witnesses who testified that they did not find a banana peeling or see any mark on the floor of the car although they were present at the time of the accident and made a search in order to determine what might have caused plaintiff to fall. The testimony of the eyewitnesses to the accident tends strongly to indicate that in their opinion plaintiff did not slip on anything, but fainted and then fell. Plaintiff relied solely on her own testimony to support her theory of the fall, to which testimony, however, we must accord its full value.

It is defendant's first contention that plaintiff produced no substantial evidence that plaintiff stepped on a banana peeling on the floor of defendant's car and was caused thereby to fall. The petition pleads negligence specifically and soley on the alleged failure of defendant to perform its duty in keeping the aisle of the car on which plaintiff was a passenger free from fruit peelings and rubbish and further pleads, as the proximate cause of the injury, that "one of her feet slipped on a fruit peeling lying in the aisle of said coach." It thus became plaintiff's duty to establish by the fair preponderance of the evidence that defendant was guilty of negligence in the particular pleaded and that the accident occurred from the cause and in the manner specified. She was entitled to recover on no other theory. [West v. Holladay, 196 S. W. 403; Boeckman v. Valier & Spries Milling Co., 199 S. W. 457; Hennekes v. Beetz, 217 S. W. 533, 203 Mo. App. 63; Abernathy v. Lusk, 182 S. W. 1049.]

We have heretofore set forth the evidence on which plaintiff mostly relies. This evidence shows that plaintiff saw a banana being eaten on the train, but she was unable to state how long before the accident that incident occurred. Her proof further shows she slipped and fell and that in her semi-conscious condition she saw a black mark on the floor of the car at the point where she fell. There is no proof tending to indicate what sort of a mark a banana peeling would make, and there is no evidence tending to show a banana peeling or

any other peeling had any connection with this black mark. Plaintiff herself saw no banana substance along the mark but testified it just looked like a damp or wet mark. Plaintiff further testified that she never at anytime saw a peeling of any kind on the floor or in the aisle of the car. The only evidence bringing a banana peeling into this case is the circumstance that plaintiff and her husband both relate—that they discovered a piece of banana peeling clinging to the heel of one of plaintiff's shoes the next day after the accident. That must be taken as an established fact in the case and yet we are unable to agree with plaintiff that it may reasonably be inferred from all the facts in the case that this banana peeling was on the floor of the car and caused her to fall. Bananas are a popular fruit, eaten everywhere and by all classes of people. It seems to be a common and unfortunate practice to throw the peelings promiscuously about on sidewalks, streets and in other public places and conveyances as well as on the floor of railroad cars.

The peeling found on plaintiff's shoe might have gotten there in a dozen different ways and in as many different places. Where plaintiff's shoe first came in contact with that banana peeling is left absolutely to conjecture. Certainly from the mere fact that a banana was eaten on the coach in which plaintiff was riding we cannot assume the peeling therefrom was thrown on the floor and then further assume that this particular banana peeling caused her to fall and was later found on the heel of her shoe. In the absence of some evidence of probative force that a banana peeling was on the floor of the car at the time plaintiff fell, the mere fact that such a peeling was found on plaintiff's shoe is only a disconnected circumstance and constitutes no proof of the fact to be proven, i. e., that a banana peeling negligently permitted by defendant to remain on the floor of the car was the proximate cause of the accident.

It is further argued by defendant that even though plaintiff's fall may be attributed to the peeling being on the floor and causing her to slip, yet the burden was on plaintiff to further show from the evidence that defendant's employees in charge of the train actually knew of the existence of same or to prove by substantial evidence that it had been there for such length of time that notice thereof might be imputed to them. This argument certainly states the general rule of law on that subject. [Jackson v. Boston Ry. Co., 217 Mass. 515, 105 N. E. 379, 51 L. R. A. (N. S.) 1152; Heinike v. Chicago R. Co., 279 Ill. 210, 116 N. E. 761; Van Winkle v. Brooklyn City R. Co., 46 Hun. 564; 12 N. Y. S. R. 548; Cincinnati Traction Co. v. Hamburger, 32 Ohio C. C. 253; Burns v. Pennsylvania R. Co., 233 Pa. 304, 82 Atl. 246; Stimson v. Milwaukee L. S. & W. R. Co., 75 Wis. 381; 44 N. W. 748, 4 R. C. L. p. 1189.]

The same principle of law has been consistently applied in this State. [Tevis v. Rys. Co., 185 S. W. (Mo. App.) 738; Price v. Transit Co., 125 Mo. App. 67, 102 S. W. 626; Taylor v. Railroad, 311 Mo. 604, 279 S. W. 115; Witting v. Railroad, 101 Mo. 631, 14 S. W. 743.]

In the Tevis case, supra, which was a street car case, the St. Louis Court of Appeals after stating the rule heretofore noted in a case where the facts are somewhat similar to those in this case, uses this language:

"We do not intend to be understood as holding that street car employees are not required to exercise a very high degree of care toward keeping the cars and steps free from foreign substances which may entail injuries upon the passengers. In this the operatives of the street car may be regarded differently from those operating a railroad train which only stops at stations miles apart. Inasmuch as street cars take on and discharge passengers at almost every corner, it would seem that the rule of high care probably required a greater measure of diligence in respect to such matters than that concerning railroad trains, which, it is said, need not stop *en route* between stations to clear ice and snow from the steps. But it must appear that the employees knew or should have known of the presence of the danger and had a reasonable time thereafter in which to remove it. Neither of these elements is here present."

In the case at bar there is no evidence that any one at anytime saw a banana peeling on the floor of the car. There is evidence that plaintiff saw a banana being eaten, but she was unable to state how long this was prior to the accident and in fact plaintiff did not see what was done with the peelings after the banana was eaten. She gave the matter little attention at the time. No one apparently knew what became of the banana peelings. Under such state of facts the conclusion is irresistible that plaintiff failed to make a case. That she was severely injured there can be no doubt, but to recover from this defendant she was required to prove the negligence alleged caused her injury. Defendant's servants may have been guilty of negligence in failing to inspect and clean the car, but unless such negligence caused her injury there can be no recovery. The case fails because plaintiff has produced no evidence of probative force in support of her charge of specific negligence.

The judgment should be reversed. It is so ordered. *Cox, P. J.,* and *Bradley, J.,* concur.